[No. C037611. Third Dist. Dec. 4, 2001.]

EVAN ENGLISH, Plaintiff and Appellant, v.
IKON BUSINESS SOLUTIONS, INC., Defendant and Respondent.

**COUNSEL**

Biegler, Ortiz & Chan, Robert P. Biegler, Jesse S. Ortiz III and Paul Chan for Plaintiff and Appellant.

Carlton, DiSante & Freudenberger, Mark S. Spring and Jeremy T. Naftel for Defendant and Respondent.

## OPINION

**NICHOLSON, J.**—Plaintiff Evan English moved to vacate a summary judgment in favor of defendant IKON Business Solutions, Inc., on the ground her attorney had neglected to file a substantive opposition to the summary judgment motion. She relied exclusively on the part of Code of Civil Procedure section 473, subdivision (b) (hereafter section 473(b)) that requires the court to vacate a "default," "default judgment," or "dismissal" resulting from attorney mistake, inadvertence, surprise, or neglect. The trial court concluded English was not entitled to relief under section 473(b) because her attorney's action did not constitute mistake, inadvertence, surprise, or neglect within the meaning of the statute.

On review, we conclude the mandatory provision of section 473(b) does not apply to summary judgments because a summary judgment is neither a "default," nor a "default judgment," nor a "dismissal" within the meaning of section 473(b). Accordingly, the trial court properly denied English's motion to vacate the summary judgment.

### PROCEDURAL HISTORY

The underlying facts are irrelevant to the issues on appeal. In July 1999, English filed a complaint against her former employer, IKON, asserting causes of action for employment discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.) and wrongful termination in violation of public policy.[1] English later dismissed her wrongful termination cause of action, leaving only her statutory claims under the FEHA.

In June 2000, IKON moved for summary judgment, offering evidence to negate various elements of English's claims. In opposing the motion, English did not submit any evidence to show that triable issues of fact existed and did not argue that IKON had failed to negate necessary elements of her claims. Instead, English based her opposition to the motion entirely on subdivision (h) of Code of Civil Procedure section 437c (hereafter section 437c(h)), which requires the court to deny a motion for summary judgment

---

[1] English also named her former supervisor and a former coworker as defendants but eventually dismissed her claims against them.

or grant a continuance "[i]f it appears . . . that facts essential to justify opposition may exist but cannot . . . then be presented . . . ."[2] English contended she needed to obtain documents from IKON and complete the depositions of several individuals "to obtain the proper evidence to oppose Defendant's Motion for Summary Judgment."

The trial court refused to grant a continuance under section 437c(h), concluding English had "not sufficiently explained what essential facts will be discovered which will raise a triable issue of material fact on any of her claims (of which she presumably has personal knowledge), and why the evidence could not have been presented in opposition to this motion." The court then concluded that IKON was entitled to summary judgment based on the evidence IKON had submitted in support of its motion. The court entered judgment against English on August 3, 2000, and notice of entry of the judgment was served on English's attorney by mail on August 23.

Two and a half months later, on November 7, 2000, English filed a motion under section 473(b) to vacate the summary judgment against her. In support of her motion, English's attorney submitted a declaration in which he claimed he had "neglected to submit a substantive opposition" to the motion for summary judgment "based on [his] mistaken belief that [he] only had to explain why [his] firm had not been dilatory in pursuing the case." Along with the motion to vacate the judgment, English submitted a new opposition to IKON's motion for summary judgment in which she presented evidence she contended was sufficient to raise triable issues of fact on almost all of her claims.

IKON opposed the motion to vacate on the ground it was untimely because English had delayed three months before seeking relief and on the ground section 473(b) "affords no remedy to a strategic gambit that fails." The trial court agreed with the latter argument, holding that the decision by English's attorney to rely on section 437c(h) as the sole basis for opposing the motion for summary judgment "is not mistake, neglect, inadvertence, or surprise within the meaning of [section] 473(b)." Accordingly, on January 12, 2001, the court denied English's motion to vacate the summary judgment. This appeal followed.

---

[2]"If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just." (§ 437c(h).)

## DISCUSSION

■ We begin with a jurisdictional issue. In her notice of appeal, which she filed on February 9, 2001, English purports to appeal from "the judgment . . . granting Defendant Ikon's Motion for Summary Judgment dated August 3, 2000 . . . and [the] rejection of Plaintiff's Motion for Relief under [section] 473(b), rejected January 12, 2001." IKON contends the appeal from the summary judgment is untimely. We agree.

"[A] notice of appeal from a judgment shall be filed on or before the earliest of the following dates: (1) 60 days after the date of mailing by the clerk of the court of a document entitled 'notice of entry' of judgment; (2) 60 days after the date of service of a document entitled 'notice of entry' of judgment by any party upon the party filing the notice of appeal, or by the party filing the notice of appeal; or (3) 180 days after the date of entry of the judgment." (Cal. Rules of Court, rule 2(a).) Here, IKON served English with a document entitled "Notice of Entry of Judgment" on August 23, 2000. Accordingly, absent an extension of the time for filing a notice of appeal, English had until October 22, 2000, to file her notice of appeal from the summary judgment.

Under rule 3(b) of the California Rules of Court, the time for filing a notice of appeal may be extended by the filing of a motion to vacate a judgment.[3] "A motion to set aside a judgment under section 473 qualifies as such a motion for purposes of extending the time to file a notice of appeal under rule 3(b)." (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 108 [95 Cal.Rptr.2d 113].) However, "in order to extend the jurisdictional time for filing a notice of appeal, the motion to vacate or set aside itself must have been timely; that is, such a motion must have been served and filed within either the normal time period for filing a notice of appeal under rule 2, or any shorter time period prescribed by applicable statute." (*Id.* at pp. 108-109, italics omitted.)

English did not file her motion to vacate the summary judgment under section 473(b) until November 7, 2000, more than two weeks after the 60-day deadline for filing her notice of appeal from the summary judgment.

---

[3]"When a valid notice of intention to move to vacate a judgment or to vacate a judgment and enter another and different judgment is served and filed by any party on any ground within the time in which, under rule 2, a notice of appeal may be filed, or such shorter time as may be prescribed by statute, the time for filing the notice of appeal from the judgment is extended for all parties until the earliest of 30 days after entry of the order denying the motion to vacate; or 90 days after filing the first notice of intention to move to vacate the judgment; or 180 days after entry of the judgment." (Cal. Rules of Court, rule 3(b).)

Accordingly, English's filing of a motion to vacate the summary judgment did not extend the time for her to file a notice of appeal from that judgment. With respect to the summary judgment, English's notice of appeal was more than three and a half months late. For this reason, we have no jurisdiction to review the trial court's grant of summary judgment in favor of IKON and must dismiss the appeal insofar as it purports to seek review of the summary judgment entered August 3, 2000, and the underlying order granting summary judgment entered August 23, 2000. (See *In re Marriage of Eben-King & King, supra,* 80 Cal.App.4th at pp. 109-110.)

■ We turn to the only part of English's appeal that is timely—her appeal from the trial court's denial of her motion to vacate the judgment under section 473(b). As relevant here, section 473(b) provides: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . . Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."[4]

In challenging the trial court's denial of her motion to vacate the summary judgment under section 473(b), English does not rely on the discretionary provision of the statute, which allows, but does not require, the court to relieve a party or his or her legal representative "from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." Instead, as she did below, English relies exclusively on the mandatory provision of the statute, which requires the court to vacate a "default" or a "default judgment or dismissal" entered against a party when that party's attorney swears in an affidavit the default or dismissal was "caused by the attorney's mistake, inadvertence, surprise, or neglect." Accordingly, the only question before us is whether the trial court erred in refusing to vacate the summary judgment under the mandatory provision of section 473(b).

---

[4]Code of Civil Procedure section 473 was not subdivided until 1996. (Stats. 1996, ch. 60, § 1.) Accordingly, cases before 1996 do not refer to subdivision (b) of the statute. Nevertheless, for consistency, we will refer to the statute as section 473(b) throughout this opinion.

In support of her argument that the trial court erred in refusing to vacate the summary judgment, English relies primarily on *Avila v. Chua* (1997) 57 Cal.App.4th 860 [67 Cal.Rptr.2d 373]. In *Avila*, the plaintiff's attorney failed to timely file oppositions to two motions for summary judgment. The trial court struck the late-filed oppositions and granted summary judgment in favor of the defendants. The trial court later denied a motion to vacate the summary judgment under section 473(b). On appeal, Division Five of the Second Appellate District held the trial court erred in denying the motion to vacate because the mandatory provision of section 473(b) applied. Relying in part on this court's decision in *Huens v. Tatum* (1997) 52 Cal.App.4th 259 [60 Cal.Rptr.2d 438], the court in *Avila* concluded the plaintiff was entitled to relief under the mandatory provision of section 473(b) because the case was "directly analogous to a default judgment." (*Avila v. Chua, supra,* 57 Cal.App.4th at p. 868.) According to the *Avila* court, the case was "of the kind which *Huens* found that the mandatory provisions were designed for: Appellant lost his day in court due solely to his lawyer's failure to timely act." (*Ibid.*)

English contends the decision in *Avila* controls here because her failure to file a "substantive" opposition to IKON's motion for summary judgment is analogous to the failure of the plaintiff in *Avila* to file timely oppositions to motions for summary judgment. In both cases, English contends, the attorney made a "mistake" that resulted in the entry of summary judgment against the client, and the mandatory provision of section 473(b) requires the court to vacate the judgment.

IKON contends *Avila* does not control here because although the failure to timely file an opposition to a motion for summary judgment is "equivalent to a default," the "strategic decision" to oppose a summary judgment based solely on section 437c(h) is not. IKON relies primarily on the decision of Division Two of the First Appellate District in *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674 [68 Cal.Rptr.2d 228]. In *Garcia*, the plaintiff moved to vacate a summary judgment on the ground "that his original opposition papers, through inadvertence and time pressure, had not correctly identified all evidence creating triable issues . . . ." (*Id.* at p. 679.) The trial court denied the motion, and the appellate court affirmed, holding section 473 was not meant to apply "where there was no complete failure to oppose, but rather an opposition which was, though apparently timely and procedurally adequate, inadequate in substance." (*Garcia,* at p. 683.)

IKON contends the decision by English's counsel to oppose the summary judgment motion based solely on section 437c(h) is more akin to the

inadequate opposition in *Garcia* than to the untimely opposition in *Avila*, and therefore *Garcia*, rather than *Avila*, controls here. We conclude, however, that *Avila* does not control here for a more fundamental reason. Contrary to the court in *Avila*, we conclude the mandatory provision of section 473(b) simply does not apply to summary judgments because a summary judgment is neither a "default," nor a "default judgment," nor a "dismissal" within the meaning of section 473(b). Therefore, regardless of whether summary judgment was entered against English because of her counsel's mistake or neglect, relief from the judgment was not available to her under the mandatory provision of section 473(b), and the trial court properly denied her motion to vacate the judgment under that provision.

To explain our conclusion, and our understanding of how the *Avila* court and others have come to extend the reach of the mandatory provision of section 473(b) beyond what the Legislature intended, we begin by tracing the history and development of that provision. The discretionary provision of section 473(b) has been part of California law since 1851. (Stats. 1851, ch. 5, § 68, p. 60 [enacting § 68 of Practice Act, predecessor of § 473]; see also *Ayala v. Southwest Leasing & Rental, Inc.* (1992) 7 Cal.App.4th 40, 43, fn. 1 [8 Cal.Rptr.2d 637]; *Uriarte v. United States Pipe & Foundry Co.* (1996) 51 Cal.App.4th 780, 788 [59 Cal.Rptr.2d 332].) The mandatory provision, however, is of much more recent vintage, having its origin in a 1988 amendment to the statute. (Stats. 1988, ch. 1131, § 1, p. 3631.) In its original form, the mandatory provision provided in relevant part: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is timely, in proper form, and accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise or neglect, vacate any resulting default judgment entered against his or her client unless the court finds that the default was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. . . ." (*Ibid.*)

As originally enacted, the mandatory provision of section 473(b) was much more limited in scope than the discretionary provision of the statute. While the discretionary provision at that time allowed the court to grant relief from "a judgment, order, or other proceeding . . . ," the mandatory provision required the court to grant relief only from a "default judgment." In *Billings v. Health Plan of America* (1990) 225 Cal.App.3d 250 [275 Cal.Rptr. 80], Division One of the Second Appellate District recognized that, given its expressly limited scope, the mandatory provision did not require a court to grant relief from an order of dismissal entered against a plaintiff. The *Billings* court first noted that the 1988 amendment "explicitly applies only to default judgments. ▇▇▇ And where the statutory language is clear and unambiguous, there is no need for construction." (*Id.* at p. 256.) The

*Billings* court then explained that the legislative history of the 1988 amendment also supported the limited application of the mandatory provision to default judgments only. The court pointed out that in its initial form the mandatory provision, like the discretionary provision, would have applied to any "judgment, order, or other proceeding"; however, before its enactment, the bill containing the amendment was revised to limit the application of the mandatory provision to default judgments. (*Id.* at pp. 256-257.)

The Legislature's focus on providing mandatory relief from default judgments, but not from other types of judgments, apparently stemmed from reluctance by the trial courts to grant discretionary relief from default judgments because of increased caseloads. (See *Peltier v. McCloud River R.R. Co.* (1995) 34 Cal.App.4th 1809, 1819 [41 Cal.Rptr.2d 182].) "[T]he policy goal sought to be effectuated [was] to relieve innocent clients from losing their day in court because the attorneys they hired to defend them inexcusably fail[ed] to file responsive papers." (*Cisneros v. Vueve* (1995) 37 Cal.App.4th 906, 911-912 [44 Cal.Rptr.2d 682], italics omitted.) To achieve this goal, the Legislature expressly limited the scope of the mandatory provision of section 473(b) to require relief from default judgments only.

In passing, the *Billings* court noted "the amendment's reference to 'default judgments' could be construed to preclude mandatory relief when only the default, as opposed to the default judgment, has been entered." (*Billings v. Health Plan of America, supra,* 225 Cal.App.3d at p. 256, fn. 2.) The Legislature remedied this problem in 1991 by amending the mandatory provision to require the court to grant relief from a "resulting default . . . which will result in entry of a default judgment," as well as from the "resulting default judgment" itself. (Stats. 1991, ch. 1003, § 1, p. 4662; see *Lorenz v. Commercial Acceptance Ins. Co.* (1995) 40 Cal.App.4th 981, 992-994 [47 Cal.Rptr.2d 362] [discussing legislative history of 1991 amendment].) Still, as Division Four of the Second Appellate District recognized in *Ayala v. Southwest Leasing & Rental, Inc., supra,* 7 Cal.App.4th 40, even after the 1991 amendment, the mandatory provision of section 473(b) did not apply outside the realm of defaults and default judgments.

In *Ayala,* arbitration awards in favor of two plaintiffs were entered as a judgment when the defendants' attorney failed to timely request a trial de novo. The trial court refused to vacate the judgment under section 473(b), and the appellate court affirmed that decision, holding: "The mandatory portion of Code of Civil Procedure section 473 is not applicable because there was neither a default judgment nor a default which would result in the entry of a default judgment in this case." (*Ayala v. Southwest Leasing & Rental, Inc., supra,* 7 Cal.App.4th at p. 43.) Citing *Billings,* the *Ayala* court

wrote: "Although the case before us concerns a money judgment rather than an order of dismissal, we agree with Division One that the Legislature meant what it said when it added the mandatory language relating to relief from default judgments. [¶] This case does not involve a default judgment. . . . Therefore, respondents' motion to vacate the judgment fell within the discretionary, rather, than the mandatory, provisions of Code of Civil Procedure section 473." (*Id.* at p. 44.)

In 1992, at the urging of the State Bar, the Legislature once again amended section 473(b), this time to give plaintiffs some of the mandatory relief that had been available to defendants since the 1988 amendment. (Stats. 1992, ch. 876, § 4, pp. 4071-4072; see *Peltier v. McCloud River R.R. Co.*, *supra*, 34 Cal.App.4th at p. 1820 [discussing legislative history of 1992 amendment].) The impetus behind this change was the State Bar's conclusion " 'that it is illogical and arbitrary to allow mandatory relief for defendants when a default judgment has been entered against them due to defense counsel's mistakes and to not provide comparable relief to plaintiffs whose cases are dismissed for the same reason.' " (*Peltier v. McCloud River R.R. Co.*, *supra*, 34 Cal.App.4th at p. 1820, quoting Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3296 (1991-1992 Reg. Sess.) as amended May 4, 1992.) By inserting the word "dismissal" into the mandatory provision of the statute, the Legislature now required the courts to vacate any "resulting default" or "resulting default judgment or dismissal" when the other requirements of the mandatory provision were met.[5]

In *Tackett v. City of Huntington Beach* (1994) 22 Cal.App.4th 60 [27 Cal.Rptr.2d 133], Division Three of the Fourth Appellate District explained that while the 1992 amendment had expanded the scope of the mandatory provision of section 473(b), the provision still had limits. In *Tackett*, the plaintiff attempted to rely on the mandatory provision of section 473(b) to obtain relief from the claim-filing requirement of the Government Tort Claims Act. The appellate court held the mandatory provision was not so broad in scope, concluding: "[W]hen an aggrieved party is not challenging a default, default judgment, or dismissal, Code of Civil Procedure section 473 still requires that an attorney's neglect be excusable before relief can be granted under that [statute]." (*Tackett*, at p. 65.) Similarly, in *Douglas v.*

---

[5]The Legislature also inserted the word "dismissal" into the discretionary provision of section 473(b), bringing that provision into its current form. That addition was superfluous, however, because the statute already provided discretionary relief from any "judgment, order, or other proceeding . . . ." As existing case law recognized, " '[a]nything done from the commencement to the termination is a proceeding. . . .' " (*Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1105 [1 Cal.Rptr.2d 222], quoting *Stonesifer v. Kilburn* (1892) 94 Cal. 33, 43 [29 P. 332].)

*Willis* (1994) 27 Cal.App.4th 287 [32 Cal.Rptr.2d 408], Division One of the Second Appellate District concluded an attorney's failure to timely file a motion to tax costs could not be corrected under the mandatory provision of section 473(b). The *Douglas* court specifically found "the costs order did not constitute either a 'default' or a 'judgment' for purposes of the mandatory provisions of section 473." (*Douglas*, at p. 291.)

Judicial interpretation of section 473(b) continued through 1994 as several decisions addressed whether the 1992 amendment to the mandatory provision of the statute required a court to grant relief from a discretionary dismissal for failure to prosecute where the attorney claimed fault for the dismissal. In *Peltier v. McCloud River R.R. Co., supra,* 34 Cal.App.4th 1809, we followed decisions by Division Three of the Fourth Appellate District (*Tustin Plaza Partnership v. Wehage* (1994) 27 Cal.App.4th 1557 [33 Cal.Rptr.2d 366]) and Division Six of the Second Appellate District (*Graham v. Beers* (1994) 30 Cal.App.4th 1656 [36 Cal.Rptr.2d 765]) in concluding "when the Legislature incorporated dismissals into section 473 it intended to reach only those dismissals which occur through failure to oppose a dismissal motion—the only dismissals which are procedurally equivalent to a default." (*Peltier v. McCloud River R.R. Co., supra,* 34 Cal.App.4th at p. 1817.) As we explained: "[A] default judgment is entered when a defendant fails to appear, and, under section 473, relief is afforded where the failure to appear is the fault of counsel. Similarly, under our view of the statute, a dismissal may be entered where a plaintiff fails to appear in opposition to a dismissal motion, and relief is afforded where that failure to appear is the fault of counsel. The relief afforded to a dismissed plaintiff by our reading of the statute is therefore comparable to the relief afforded a defaulting defendant." (*Id.* at pp. 1820-1821.)

In *Huens v. Tatum, supra,* 52 Cal.App.4th 259, we confronted whether the Legislature intended the mandatory provision of section 473(b) to apply to a voluntary dismissal entered pursuant to a settlement agreement. In setting out the "background and history" of the mandatory provision, we explained "[a]lthough the statute on its face affords relief from unspecified 'dismissal' caused by attorney neglect, our courts have, through judicial construction, prevented it from being used indiscriminately by plaintiffs' attorneys as a 'perfect escape hatch' [citation] to undo dismissals of civil cases." (*Id.* at pp. 263-264.) As an example, we cited *Lorenz v. Commercial Acceptance Ins. Co., supra,* 40 Cal.App.4th at page 990 for the proposition that "[m]andatory relief is not available after a summary judgment or judgment after trial, which involve actual litigation and adjudication on the merits." (*Huens v. Tatum, supra,* 52 Cal.App.4th at p. 263.) That statement was dictum, however, because *Huens* did not involve either a summary judgment or a

judgment after trial. Moreover, the statement from *Lorenz* upon which we relied was likewise dictum, because *Lorenz* also did not involve a summary judgment or judgment after trial.[6] ▮▮ Returning to the case before us, we went on in *Huens* to reject the plaintiff's contention the mandatory provision of section 473(b) applied to voluntary dismissals, stating: "The purpose of the statute was to alleviate the hardship on parties who *lose their day in court* due solely to an inexcusable failure to act on the part of their attorneys. There is no evidence the amendment was intended to be a catch-all remedy for every case of poor judgment on the part of counsel which results in dismissal." (*Huens*, at p. 264, italics in original.)

Eight months after we decided *Huens*, Division Five of the Second Appellate District decided *Avila v. Chua, supra*, 57 Cal.App.4th 860. As noted above, the issue before the court in *Avila* was whether the trial court had erred in refusing to vacate a summary judgment entered when the plaintiff's attorney belatedly opposed two motions for summary judgment. After discussing *Ayala*, *Lorenz*, and *Huens*, but without reviewing in detail the history and development of the mandatory provision of section 473(b), the *Avila* court concluded the mandatory provision entitled the plaintiff to relief from the summary judgment entered against him. The court explained: "This case is unlike *Ayala*, where, as the court noted, the litigants participated in an arbitration hearing which resulted in an award which had the same force and effect as a civil judgment. . . . There has been no 'litigation and adjudication on the merits,' the rationale *Huens* suggested for excluding certain kinds of dismissals from the mandatory provisions. Instead, this case is of the kind which *Huens* found that the mandatory provisions were designed for: Appellant lost his day in court due solely to his lawyer's failure to timely act. [¶] . . . [¶] This case is directly analogous to a default judgment: Due to counsel's late filing of crucial documents, the court decided the matter on the other parties' pleadings. There was no litigation on the merits." (*Avila*, at pp. 867-868, citation omitted.) Thus, the *Avila* court concluded that in some circumstances the mandatory provision of section 473(b) may require a court to vacate a summary judgment entered as a result of an attorney's mistake, inadvertence, surprise or neglect. For the following reasons, we disagree with that conclusion.

The determination of whether the mandatory provision of section 473(b) applies to summary judgments is a task of statutory construction.

---

[6]The question presented in *Lorenz* was whether the mandatory provision of section 473(b) applied to a default entered by the *court*, as opposed to one entered by the *clerk*, given the statute's express reference to the former but not the latter. (See *Lorenz v. Commercial Acceptance Ins. Co., supra*, 40 Cal.App.4th at pp. 988-989.) The *Lorenz* court concluded the statute's reference to a default entered by the clerk was "merely descriptive," not restrictive. (*Id.* at pp. 991-992.)

■ "The axioms of statutory construction require us first to look at the words used by the Legislature. If the language is unambiguous, our task is finished. [Citations.] If the language is ambiguous, we then examine the context of the statute, striving to harmonize the provision internally and with related statutes, and we may also consult extrinsic indicia of intent as contained in the legislative history of the statute." (*Construction Industry Force Account Council v. Amador Water Agency* (1999) 71 Cal.App.4th 810, 815 [84 Cal.Rptr.2d 139].)

■ Turning to the language of section 473(b), we find nothing in the statute to suggest the Legislature intended the mandatory provision of the statute to apply to summary judgments. On its face, the mandatory provision requires the court, if certain prerequisites are met, to vacate a "default," a "default judgment," or a "dismissal." As we shall explain, a summary judgment is neither a "default," nor a "default judgment," nor a "dismissal."

■ The word "default" has both a broad meaning and a narrow meaning. Broadly, a "default" is "[t]he omission or failure to perform a legal or contractual duty . . . ." (Black's Law Dict. (7th ed. 1999) p. 428.) Narrowly, the word "default" refers to a defendant's failure to answer a complaint. (See Code Civ. Proc., § 585 [setting forth procedures for entry of default]; *Lorenz v. Commercial Acceptance Ins. Co., supra*, 40 Cal.App.4th at pp. 990-991 [discussing § 585].) As used in the mandatory provision of section 473(b), "default" carries its narrower meaning. The mandatory provision of the statute requires the court to vacate not any "default," but only a "default entered by the clerk . . . which will result in entry of a default judgment . . . ." By qualifying the word "default" in this manner, the Legislature plainly conveyed its intent to use the word in its narrower sense. Thus, the mandatory provision of section 473(b) applies to a "default" entered by the clerk (or the court)[7] when a defendant fails to answer a complaint, not to every "omission" or "failure" in the course of an action that might be characterized as a "default" under the more general meaning of the word.

With the word "default" thus properly understood, the meaning of the term "default judgment" follows inexorably. A "default judgment" within the meaning of section 473(b) is a judgment entered after the defendant has failed to answer the complaint and the defendant's default has been entered. (See Code Civ. Proc., § 585 [setting forth procedures for entry of default judgment]; *Peltier v. McCloud River R.R. Co., supra*, 34 Cal.App.4th at p. 1820 ["a default judgment is entered when a defendant fails to appear"].)

---

[7]See *Lorenz v. Commercial Acceptance Ins. Co., supra*, 40 Cal.App.4th at pages 991-992.

Once the terms "default" and "default judgment" are correctly understood, it takes no great leap of logic to conclude that a summary judgment is neither a "default" nor a "default judgment" within the meaning of the mandatory provision of section 473(b). A summary judgment does not result from a defendant's failure to answer the complaint. Instead, a summary judgment is a judgment entered following a motion based on "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken," when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subds. (b) & (c).) By its very nature, a summary judgment is distinct from both a "default" and a "default judgment" as those terms are used in section 473(b).

Based on our construction of the statute, the *Avila* court's conclusion that a summary judgment is "directly analogous to a default judgment" when the opposing party fails to file a timely opposition to the motion misses the point. (*Avila v. Chua, supra,* 57 Cal.App.4th at p. 868.) It is not an appellate court's task, nor, indeed, its prerogative, when interpreting a statute, to extend the scope of the statute to encompass situations "analogous" to those the statute explicitly addresses. Rather, an appellate court's task is simply to determine what the Legislature meant by the words it used, relying first and foremost on the words themselves. For the reasons already given, the terms "default" and "default judgment," as used in the mandatory provision of section 473(b), cannot reasonably be construed to encompass a summary judgment, regardless of whatever omissions or failures by counsel may have preceded the entry of that judgment.

A similar conclusion follows with regard to the word "dismissal." Two justices of Division Four of the Second Appellate District have observed that " 'dismissal' is a much broader concept than 'default' . . . ." (*Yeap v. Leake* (1997) 60 Cal.App.4th 591, 600 [70 Cal.Rptr.2d 680].) Even if that is generally true, it does not follow that by using the word "dismissal" in the mandatory provision of section 473(b), the Legislature intended to encompass every resolution of a case against a plaintiff, including a summary judgment in favor of a defendant. As Justice Epstein's dissent in *Yeap* explained: "Without belaboring the obvious, it should suffice to say that, in the context of pleadings and motions, a dismissal is the withdrawal of an application for judicial relief by the party seeking such relief, or the removal of the application by a court." (*Yeap,* at p. 603 (dis. opn. of Epstein, J.).) Although Code of Civil Procedure section 581 describes various circumstances in which an action may be dismissed, either by the court or by a

party, noticeably lacking is any provision describing a summary judgment in favor of a defendant as a "dismissal."

■ In determining the Legislature's intent in adding the word "dismissal" to the mandatory provision of section 473(b), we must construe the word in the context of the provision in which it appears, "striving to harmonize the provision internally . . . ." (*Construction Industry Force Account Council v. Amador Water Agency, supra,* 71 Cal.App.4th at p. 815.) In doing so, we are guided by the principle of statutory construction known as *noscitur a sociis,* i.e., it is known from its associates. (See *Coors Brewing Co. v. Stroh* (2001) 86 Cal.App.4th 768, 778 [103 Cal.Rptr.2d 570].) " 'In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list.' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 307 [58 Cal.Rptr.2d 855, 926 P.2d 1042], quoting *Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1012 [9 Cal.Rptr.2d 358, 831 P.2d 798].)

■ Applying this principle of construction to the mandatory provision of section 473(b), we construe the word "dismissal" as having a limited meaning similar to the term "default judgment." This approach is supported by the history of the mandatory provision, set out above. As Justice Epstein explained in his dissenting opinion in *Yeap:* "The purpose of the [1992] amendment was to give plaintiffs the functional equivalent of the 'default' provision for defendants . . . ." (*Yeap v. Leake, supra,* 60 Cal.App.4th at p. 604 (dis. opn. of Epstein, J.).) Thus, where a defendant was entitled to mandatory relief from a "default" or "default judgment" resulting from attorney mistake, inadvertence, surprise, or neglect, a plaintiff would be entitled to mandatory relief from a "dismissal" resulting from similar circumstances.

This court has previously recognized the legislative intent to achieve parity between defendants and plaintiffs in their entitlement to relief under the mandatory provision of section 473(b). We gave effect to that intent in *Peltier* when we concluded the Legislature "intended to reach only those dismissals which occur through failure to oppose a dismissal motion—the only dismissals which are procedurally equivalent to a default." (*Peltier v. McCloud River R.R. Co., supra,* 34 Cal.App.4th at p. 1817.) Other decisions from this court have also construed the word "dismissal" in the mandatory provision of section 473(b) as having a limited meaning, to prevent that

provision "from being used indiscriminately by plaintiffs' attorneys as a 'perfect escape hatch' [citation] to undo dismissals of civil cases." (*Huens v. Tatum, supra,* 52 Cal.App.4th at pp. 263.) Thus, we have held that the mandatory provision does not apply to: (1) a dismissal following the sustaining of a demurrer without leave to amend on the ground the statute of limitations had run (*Castro v. Sacramento County Fire Protection Dist.* (1996) 47 Cal.App.4th 927 [55 Cal.Rptr.2d 193]); (2) a voluntary dismissal pursuant to a settlement agreement (*Huens v. Tatum, supra,* 52 Cal.App.4th 259); and (3) a mandatory dismissal for failure to serve a complaint within three years (*Bernasconi Commercial Real Estate v. St. Joseph's Regional Healthcare System* (1997) 57 Cal.App.4th 1078 [67 Cal.Rptr.2d 475]).

Unfortunately, language from our opinions in *Peltier* and *Huens*, which we used to explain our view of the Legislature's limited intent in adding the word "dismissal" to section 473(b), has been taken out of context and used by other courts to support an expansive interpretation of the mandatory provision of the statute—an interpretation the words of the statute do not support. In holding the provision was not intended to apply to voluntary dismissals, we observed in *Huens* "[t]he purpose of the statute was to alleviate the hardship on parties who *lose their day in court* due solely to an inexcusable failure to act on the part of their attorneys." (*Huens v. Tatum, supra,* 52 Cal.App.4th at p. 264, italics in original.) The *Avila* majority seized on this language to support its conclusion the mandatory provision of section 473(b) was intended to apply to a summary judgment entered against a plaintiff where the plaintiff's attorney failed to oppose the summary judgment motion in a timely manner. (*Avila v. Chua, supra,* 57 Cal.App.4th at p. 868.) Regrettably, the *Avila* court focused on our statement of the mandatory provision's purpose without giving sufficient attention to the language and history of the provision itself and to the context in which we described the purpose of the provision. We offered our statement of the provision's purpose in *Huens* to explain why the mandatory provision must be construed in a limited, rather than an expansive, manner and why it could not be construed to require relief from a voluntary dismissal. In relevant part, we stated: "The statute's use of the word 'against' limits the class of targeted dismissals and makes clear that only *involuntary* dismissals are affected. [¶] This conclusion is consistent with the narrow view of the Legislature's intent which appellate courts have taken, i.e., that the section's purpose was simply 'to put plaintiffs whose cases are dismissed for failing to respond to a dismissal motion on the same footing with defendants who are defaulted for failing to respond to an action.' [Citations.] The purpose of the statute was to alleviate the hardship on parties who *lose their day in court* due solely to an inexcusable failure to act on the part of their attorneys.

There is no evidence the amendment was intended to be a catch-all remedy for every case of poor judgment on the part of counsel which results in dismissal." (*Huens v. Tatum, supra,* 52 Cal.App.4th at p. 264, quoting, in part, *Peltier v. McCloud River R.R. Co., supra,* 34 Cal.App.4th at p. 1824, italics in original.)

By taking our statement about the purpose of the mandatory provision out of context, the *Avila* court was able to use that statement to justify extending the reach of the provision beyond the language of the statute itself and beyond what the Legislature intended when it added the word "dismissal" to the statute. At the same time, the *Avila* court avoided directly addressing the issue we address here—whether the Legislature intended the word "dismissal" to encompass a summary judgment entered against a plaintiff.

Other courts have perpetuated the *Avila* court's unwarranted, expansive interpretation of the mandatory provision of section 473(b) based on statements taken out of context from our decisions in *Huens* and *Peltier.* In *Yeap v. Leake,* the majority held the mandatory provision of the statute entitled a plaintiff to relief from a judgment of "$0" entered after the plaintiff's attorney failed to attend judicial arbitration and then failed to timely request a trial de novo. Citing *Avila* and *Peltier,* the majority concluded the effect of an award of "$0" "was the same as a dismissal for failure to appear on the first day of trial" and that "the judgment entered in this matter was analogous to a default because it came about as a result of appellant's failure to appear and litigate at the arbitration hearing." (*Yeap v. Leake, supra,* 60 Cal.App.4th at p. 601.)

More recently, in *In re Marriage of Hock & Gordon-Hock* (2000) 80 Cal.App.4th 1438 [96 Cal.Rptr.2d 546], Division Five of the Second Appellate District held a party in a dissolution proceeding was entitled to have a judgment on reserved issues vacated under the mandatory provision of section 473(b) because the party's attorney failed to appear on the date set for trial of the reserved issues. Citing *Yeap* and *Avila,* among other decisions, the court concluded "section 473 may be used for relief under circumstances . . . which have been determined to be the procedural equivalent of a default." (80 Cal.App.4th at p. 1443.)

We perceive it paradoxical that language from our opinions in *Peltier* and *Huens*—opinions that construed the word "dismissal" as having a limited meaning in the context of the mandatory provision of section 473(b)—have now led to an expansive interpretation of the statute under which the

dispositive test, largely detached from the language of the statute itself, is whether the ruling from which relief is sought was "in the nature of a default" and whether the party seeking relief "had her day in court." (See *In re Marriage of Hock & Gordon-Hock, supra,* 80 Cal.App.4th at pp. 1444-1445; *Brown v. Williams* (2000) 78 Cal.App.4th 182, 189 [92 Cal.Rptr.2d 634] [concluding, for purposes of the mandatory provision of § 473(b), that participation in a judicial arbitration proceeding "does constitute a 'day in court' "].) We agree with Justice Epstein, who wrote in his dissent in *Yeap:* "[T]o read the mandatory provision of Code of Civil Procedure section 473 to apply whenever a party loses his or her day in court due to attorney error goes far beyond anything the Legislature has done." (*Yeap v. Leake, supra,* 60 Cal.App.4th at p. 605 (dis. opn. of Epstein, J.).)

In keeping with our opinions in *Peltier* and *Huens,* and upon careful reassessment of the language and history of the statute, we adhere to the conclusion that the Legislature intended the word "dismissal" to have a limited meaning in the context of the mandatory provision of section 473(b). In doing so, we disagree with the growing number of decisions, including *Avila, Yeap,* and *In re Marriage of Hock & Gordon-Hock,* which, in understandable, yet ultimately misguided quests to salvage cases lost by inept attorneys, have applied the mandatory provision far beyond the limited confines the Legislature intended. "If the Legislature had intended to require relief whenever a client loses his or her day in court due to attorney error, it could easily have said so." (*Yeap v. Leake, supra,* 60 Cal.App.4th at p. 604 (dis. opn. of Epstein, J.).) By carefully differentiating between the scope of the discretionary provision of section 473(b) (which applies to "a judgment, dismissal, order, or other proceeding") and the scope of the mandatory provision (which applies to a "default" or a "default judgment or dismissal"), the Legislature chose to limit the circumstances in which a court must grant relief based on an attorney's mistake, inadvertence, surprise, or neglect. Neither this court nor any other court is at liberty to substitute its judgment for that of the Legislature in determining how far the statute should reach, no matter what good intentions may urge such an action.

Given the limited meaning of the word "dismissal" as used in the mandatory provision of section 473(b), a summary judgment in favor of a defendant is not a "dismissal." A summary judgment is not "the removal . . . by a court" "of an application for judicial relief." (*Yeap v. Leake, supra,* 60 Cal.App.4th at p. 603 (dis. opn. of Epstein, J.).) Rather, it is a judicial determination that under the undisputed facts before the court, the moving party is entitled to prevail in the action as a matter of law. (Code Civ. Proc.,

§ 437c, subd. (c).) It is true the summary judgment statute allows a court to grant summary judgment if the opposing party fails to file a separate statement of disputed and undisputed material facts. (Code Civ. Proc., § 437c, subd. (b).) Even in that situation, however, the court cannot grant the motion "until it has considered all of the papers and determined no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." (*Kulesa v. Castleberry* (1996) 47 Cal.App.4th 103, 113 [54 Cal.Rptr.2d 669].) Thus, a summary judgment in favor of a defendant does not constitute a removal of the plaintiff's application for judicial relief, but rather an adjudication of that application based on the undisputed facts before the court.

As used in the mandatory provision of section 473(b), the word "dismissal" cannot reasonably be construed to encompass a judgment to which a court has determined the defendant is entitled as a matter of law based on undisputed facts before the court. Consequently, we conclude a summary judgment is not a "dismissal" within the meaning of section 473(b).

Our construction of section 473(b) furthers the legislative goal behind the 1992 amendment of putting defendants and plaintiffs on equal footing in their entitlement to mandatory relief under the statute. Under no circumstance can the term "default judgment," as we have interpreted that term, be deemed to encompass a summary judgment entered in favor of a plaintiff. By rigorously adhering to the statutory language, to the principles of statutory construction, and to the (by now) well-known legislative purpose behind the 1992 amendment, we carry out the Legislature's intent by ensuring neither party is entitled to a greater measure of relief than the other under the mandatory provision of section 473(b) in the summary judgment context.

In the appropriate circumstances, of course, relief from a summary judgment may be available to either a plaintiff or a defendant under the discretionary provision of section 473(b). (See, e.g., *Uriarte v. United States Pipe & Foundry Co., supra,* 51 Cal.App.4th at p. 791.) This is so because discretionary relief under the statute is not limited to defaults, default judgments, and dismissals, but is available from any judgment. In this case, however, English did not seek relief, here or in the trial court, under the discretionary provision of section 473(b). Accordingly, our construction of the mandatory provision of section 473(b) is dispositive of the remainder of this appeal. Because a summary judgment is neither a "default," nor a "default judgment," nor a "dismissal" within the meaning of section 473(b), the trial court properly denied English's motion to vacate the summary judgment in favor of IKON.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Sims, J., concurred.

On December 27, 2001, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 13, 2002. Kennard, J., was of the opinion that the petition should be granted.