Filed 7/16/24  Cortave v. Oremor of Temecula, LLC CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JONATHAN CORTAVE, Plaintiff and Respondent, v. OREMOR OF TEMECULA, LLC et al., Defendants and Appellants. | D083290 (Super. Ct. No. 37-2022-00009743-CU-FR-NC) |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas, III, Judge.  Affirmed.

Arentfox Schiff, Aaron H. Jacoby, John D. Bronstein and Gary D. Brophy for Defendants and Appellants.

Dumbeck & Dumbeck, Jason D. Dumbeck and Curtis M. King for Plaintiff and Respondent.

Jonathan Cortave filed this consumer action against vehicle dealership Oremor of Temecula, LLC (Oremor) and two other defendants.  Based on a mandatory arbitration provision in the vehicle sale agreements, Cortave and Oremor initially stipulated to arbitrate the matter before the American Arbitration Association (AAA) and stay the action pending arbitration.  The

AAA, however, terminated the arbitration proceedings without a hearing because Oremor failed to pay a $300 arbitration fee to the AAA within 30 days of the due date. Cortave then exercised his statutory right to treat the nonpayment as a material breach of the arbitration agreement and litigate the matter in court under Code of Civil Procedure[1] sections 1281.97 and 1281.98. These statutes provide that when a business or employer fails to make timely payment of arbitration fees in a consumer or employment action, its failure to do so constitutes a material breach of the arbitration agreement and allows the consumer or employee to elect to litigate the dispute in court.

After Cortave's case returned to the trial court, the court denied a defense motion to compel arbitration. Applying sections 1281.97 and 1281.98, the court concluded that Oremor had waived the right to arbitrate by failing to make timely payment of the AAA fees. The court also refused to grant relief to the defense for its untimely payment based on defense counsel's alleged "mistake, inadvertence, surprise, or neglect" under section 473, subdivision (b). Finding no error, we now affirm the court's order.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint*

In March 2022, Cortave filed a complaint for claims arising out of the purchase of two vehicles from Oremor. The complaint alleged that employees of Oremor falsified Cortave's credit application and fraudulently induced him to sign lease contracts instead of purchase agreements, then falsified his credit application again when they converted the transactions to sale contracts. Cortave asserted various claims against Oremor, its employee Rigoberto Rosas, and lender Toyota Motor Credit Corporation.

---

[1] All further statutory references are to the Code of Civil Procedure.

Cortave attached the retail sale contracts for the vehicles as exhibits to his complaint. Both contracts contained mandatory arbitration provisions.

B. *Stipulation to Arbitration*

Oremor elected to invoke the mandatory arbitration provisions. In September 2022, Oremor and Cortave signed a stipulation to arbitrate the case and stay the entire action pending arbitration. Cortave selected the AAA to conduct the arbitration as allowed by the contracts. Based on the stipulation, the court entered an order staying the entire action pending the completion of arbitration.

C. *AAA Proceedings*

On February 2, 2023, the AAA requested Oremor to pay filing fees of $600 and an arbitrator's compensation deposit of $2,500, for a total of $3,100. The letter stated that the fees "should be received no later than February 16th, 2023 or the AAA may decline to administer this dispute . . . ." It also stated that because the arbitration was subject to section 1281.97, "payment must be received by March 18th, 2023 or the AAA will close the parties' case," but because that date fell on a weekend or holiday, "the AAA will accept payment on March 20th, 2023." (Emphasis omitted.) Oremor paid these two fees totaling $3,100 on February 14, 2023.

The next day, on February 15, 2023, the AAA case manager emailed an initiation letter to the parties providing information about the arbitration, future deadlines, and arbitration fees. The letter stated that the AAA's Consumer Arbitration Rules applied to the matter. Under the heading "Amounts Paid or Due," the letter included the following bullet points:

> "● The Consumer has met the filing requirements regarding their filing fee.
>
> "● The Business has paid $3,100 for the filing fee and arbitration compensation deposit.

3

"● $300 is now due from the Business. An invoice is enclosed to facilitate payment by the Business pursuant to. . . .sections 1281.97 and 1281.98. This is provided to all case participants pursuant to these statutes. Payment can be made by credit card, eCheck, wire, or check. If paying by check, please send payment via a trackable delivery service.

"● Payment from the Business is due upon receipt. As this arbitration is subject to . . . sections 1281.97 and 1281.98, payment from the Business must be paid by March 17, 2023 or the AAA may close this case.

"● Pursuant to . . . section 1281.97, the AAA cannot grant any extensions to this payment deadline."

Included with the letter was a separate AAA invoice to Oremor for the additional $300 fee. The description line of the invoice identified the charge as a "Fee for Non-registered Consumer Clause." The invoice was dated February 15, 2023 and stated that the charge was "due upon receipt." According to the AAA Consumer Rules and Consumer Fee Schedule, the AAA charges this $300 fee for an expedited initial review whenever a consumer arbitration is filed but the business has not previously submitted its arbitration agreement for review and placement on the AAA registry.

Although counsel for Oremor did not deny receiving the AAA's February 25, 2023 letter or the $300 invoice, he admitted that he "did not review the $300 Expedited Review Fee Invoice or provide it to Oremor until March 20, 2023."

On March 2, 2023, Cortave requested that the AAA case manager proceed with the appointment of an arbitrator. In response, the AAA case manager emailed the parties on March 8, 2023, stating that "the appointment process will begin upon receipt of the expedited review fee which have [*sic*]

4

not yet been received from Respondent." The email further stated: "This is a courtesy reminder that since this arbitration is subject to . . . sections 1281.97 and 1281.98, payment from the Business must be made by March 17, 2023 or the AAA may close this case."

Oremor's counsel received the case manager's March 8, 2023 email, but he mistakenly "believed that all AAA fees, including the $300 Expedited Review Fee, had already been paid as part of Oremor's initial $3,100 payment, and that all AAA invoices had been paid." On March 9 and 15, 2023, defense counsel emailed the AAA case manager expressing his understanding that all AAA fees had already been paid. He attached a copy of the AAA's confirmation that Oremor had paid $3,100 for the filing fees and arbitrator's compensation deposit. The AAA case manager did not respond to these emails.

Oremor did not pay the additional $300 expedited review fee by the March 17, 2023 deadline. On March 20, 2023, the AAA suspended the arbitration based on Oremor's failure to pay the fee. The same day, after being notified of the suspension, Oremor paid the fee. However, Cortave did not agree to extend the payment deadline and instead elected to withdraw his claims from arbitration and proceed in court. Accordingly, the AAA administratively closed the case for nonpayment of the expedited review fee.

D. *Motion to Compel Arbitration*

Because Cortave's case had mistakenly been dismissed in superior court, he filed a successful ex parte application to set aside the dismissal and return the case to the civil active list. Cortave then filed a first amended complaint asserting additional claims.

Oremor and the other defendants moved to compel arbitration based on the arbitration provisions of the sales contracts. They argued that: (1) the

5

AAA erred by dismissing the arbitration for Oremor's failure to pay the expedited review fee because Oremor paid the fee on the AAA's March 20, 2023 deadline for payment of the other fees; and (2) alternatively, Oremor was entitled to relief under section 473, subdivision (b), because the AAA's dismissal resulted from its attorney's mistaken belief that all outstanding AAA invoices had been paid, including the $300 expedited review fee. Oremor's counsel submitted a declaration supporting the motion, which stated that he believed the $300 fee had already been paid due to an "inadvertent mistake." Cortave opposed the motion.

The trial court denied the defense motion to compel arbitration. The court acknowledged there was no dispute over the existence of a valid arbitration agreement. However, the court concluded that Oremor waived its right to compel arbitration under sections 1281.97 and 1281.98 based on the AAA's determination that Oremor failed to make timely payment of the expedited review fee within 30 days of its due date. Moreover, the court found that it lacked authority or jurisdiction to review the AAA's determination on this issue. The court explained:

> "While Defendants argue they did timely comply with AAA's payment deadlines, this Court does not believe it has the authority to order AAA to deem the payment of any arbitration fee payment as either timely or untimely. Courts have limited powers once a matter is submitted to arbitration. '[T]he action at law sits in the twilight of abatement with the trial court retaining merely a vestigial jurisdiction over matters submitted to arbitration.' (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 923.) This 'vestigial jurisdiction' consists of the Court being empowered to 'appoint arbitrators if the method selected by the parties fails ( . . . § 1281.6); grant a provisional remedy 'but only upon the ground that the award to which an applicant may be entitled may be rendered ineffectual without provisional relief'

6

( . . . § 1281.8, subd. (b)); and confirm, correct or vacate the arbitration award ( . . . § 1285).

"Each of the aforementioned Code sections explicitly states that the Court is entitled or directed to take some affirmative action. There is no directive in either [section] 1281.97 or 1281.98 which authorizes this Court to render a decision regarding whether Defendants did or did not comply with AAA's payment deadlines and this Court abstains from reaching a decision on that issue. Based on a review of the totality of correspondence between AAA, counsel for Plaintiff, and counsel for Defendants, it is clear to this Court that _AAA_ believed Defendants failed to comply with the payment deadlines and acted accordingly by offering Plaintiff the option to withdraw from the subject arbitration."

Finally, the court denied defendants' request for relief based on defense counsel's alleged mistake under section 473, subdivision (b). The court explained: "While the facts giving rise to this motion (i.e., inadvertently making a late payment), would likely permit relief in a _judicial_ proceeding, Defendants proffer no authority that would support judicial intervention for relief from 'mistake, inadvertence, surprise, or neglect' _occurring in an arbitration_. Accordingly, the Court finds that _Code Civ. Proc._ [section] 473[, subdivision] (b) does not grant this Court authority to afford Defendants relief for 'mistake, inadvertence, surprise, or neglect' occurring in an arbitration."

DISCUSSION

I

Defendants first challenge the trial court's finding that Oremor waived the right to compel arbitration by its untimely payment of the expedited review fee under sections 1281.97 and 1281.98. They assert that the trial court erred by relying on the AAA's dismissal of the arbitration because the

7

AAA's dismissal was itself in error. According to defendants, the AAA acted erroneously because the deadline for payment of this fee should have been the March 20, 2023 deadline for payment of the other two AAA initiation fees, rather than the March 17, 2023 date set forth in the AAA's initiation letter (30 days from the AAA's "due upon receipt" invoice for the expedited review fee). In making this argument, however, defendants have not addressed the trial court's ruling that it lacked authority or jurisdiction to review the AAA's determination of this issue. Because defendants have not made any argument contesting the actual legal basis for the trial court's ruling, we conclude they have forfeited the issue.

"[S]ections 1281.97 and 1281.98 provide that a company or business pursuing arbitration of a [consumer or employment] dispute under a predispute arbitration agreement is in material breach and default of that agreement—thereby waiving its right to arbitrate—if it fails to timely pay its share of arbitration fees." (*Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1061–1062.) These statutes require an arbitration provider to send the parties invoices for fees "due upon receipt" unless the parties agree otherwise. (§§ 1281.97, subd. (a)(2), 1281.98, subd. (a)(2); *Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 361 (*Doe*).) The fees must be paid within a statutory grace period of 30 days after the due date. (§§ 1281.97, subd. (a)(1), 1281.98, subd. (a)(1).) If the drafting party does not pay its share of the fees within the 30-day grace period, the drafting party is in material breach of the arbitration agreement and waives its right to compel or proceed with the arbitration. (§§ 1281.97, subd. (a)(1), 1281.98, subd. (a)(1).) The consumer or employee may then elect between several options, including

8

withdrawing the claim from arbitration and proceeding in court.[2] (§§ 1281.97, subd. (b)(1), 1281.98, subd. (b)(1).)

"Under the plain language of the statute, . . . the triggering event is nothing more than nonpayment of fees within the 30-day period—the statute specifies no other required findings, such as whether the nonpayment was deliberate or inadvertent, or whether the delay prejudiced the nondrafting party. The plain language therefore indicates the Legislature intended the statute to be strictly applied whenever a drafting party failed to pay by the statutory deadline." (*Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 776.) The statute contains no exceptions for substantial compliance, unintentional nonpayment, or absence of prejudice. (*Id.* at p. 775.)

"One of the Legislature's main objectives was to deter employers from strategically withholding payment of arbitration fees so that they could no longer stymie the ability of employees to assert their legal rights. To do this, the Legislature established strict breach provisions for nonpayment that did not involve any inquiry into the intent or good faith of an employer or the reasons for nonpayment. *Any* untimely payment constitute[s] a material breach regardless of the circumstances or status of the arbitration proceedings." (*Doe, supra*, 95 Cal.App.5th at p. 357.) The statute "establishes a simple bright-line rule that a drafting party's failure to pay outstanding arbitration fees within 30 days after the due date results in its material breach of the arbitration agreement." (*De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 753.) This bright-line rule applies even if the

---

2    The difference between sections 1281.97 and 1281.98 is that the former governs fees and costs required to *initiate* an arbitration proceeding whereas the latter governs fees and costs required to *continue* an arbitration proceeding. (*Suarez v. Superior Court* (2024) 99 Cal.App.5th 32, 38, fn. 3.) In all other respects, these provisions are materially the same. We need not decide which applies to the AAA's expedited review fee.

payment is only a few days late. (*Doe*, at pp. 350, 354–355 [strictly enforcing the statute even though payment was only two days late].)

In this case, Oremor received the $300 invoice for the expedited review fee on February 15, 2023, the date it was issued, and the invoice stated that the charge was "due upon receipt." The AAA's initiation letter sent along with the invoice advised Oremor that it had 30 days from the February 15, 2023 due date (until March 17, 2023) to make the payment under sections 1281.97 and 1281.98 "or the AAA may close this case," and the letter also informed Oremor that "the AAA cannot grant any extensions to this payment deadline." (See *Doe, supra*, 95 Cal.App.5th at pp. 351–352, 354–355 [30-day grace period begins to run immediately upon receipt of "due upon receipt" invoice].) These statutes require payment within the 30-day grace period, and they do not allow the arbitration provider to extend the grace period without the parties' agreement. (§§ 1281.97, subd. (a)(1), (2), 1281.98, subd. (a)(1), (2); *Doe*, at p. 361 [AAA lacked authority to extend 30-day statutory grace period absent parties' agreement].) However, Oremor did not make the payment within the 30-day grace period ending on March 17, 2023. As a result, the AAA concluded that the payment was not timely made, Oremor was in material breach of the arbitration agreement, and Cortave had a right to elect to withdraw from the arbitration and pursue his claims in court, as the statutes expressly permit. (§§ 1281.97, subd. (b)(1), 1281.98, subd. (b)(1).)

On appeal, defendants' sole argument on this issue is that the AAA erred in making this determination. But this argument does not address the legal basis for the trial court's ruling. The court expressly declined to decide whether the AAA erred, concluding that it lacked authority or jurisdiction to review the AAA's decision. Defendants have not made any legal argument as

10

to why this ruling was erroneous; they have not discussed the authorities cited by the trial court; and they have not cited any authorities of their own on this jurisdictional issue. We are not required to develop their arguments for them. (*Los Angeles Unified School District v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 498.) By failing to make any argument with citation to appropriate authority on the issue the trial court found to be dispositive, defendants have failed to carry their burden of demonstrating error and have forfeited the issue. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.)[3]

## II

Defendants next argue that the trial court abused its discretion in denying relief for the untimely payment based on defense counsel's "mistake, inadvertence, surprise, or neglect" under section 473, subdivision (b). Relying on the holding of *MJM, Inc. v. Tootoo* (1985) 173 Cal.App.3d 598 (*MJM*), they contend that section 473 relief is available in nonjudicial arbitration proceedings and should have been granted because the AAA's dismissal of the arbitration "is an order with as much finality as an arbitration award because it closes the arbitration . . . ." We disagree.

"Section 473, subdivision (b), contains two distinct provisions for relief: one is discretionary and is reserved for situations of excusable neglect, while the other is mandatory and applies even to inexcusable neglect of an attorney resulting in his or her client's default provided that the attorney submits an adequate affidavit of fault." (*Bailey v. Citibank, N.A.* (2021) 66 Cal.App.5th

---

[3] Oremor does not argue on appeal that sections 1281.97 and 1281.98 are preempted by the Federal Arbitration Act. (9 U.S.C. § 1 et seq.) Accordingly, we do not decide this issue, which is currently pending before our Supreme Court in *Hohenshelt v. Superior Court* (2024) 99 Cal.App.5th 1319, review granted June 12, 2024, S284498.

335, 348.) The discretionary provision provides in pertinent part that "[t]he court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (§ 473, subd. (b).) The mandatory provision requires relief when the application is accompanied by an attorney affidavit of "mistake, inadvertence, surprise, or neglect" resulting in a "default," "default judgment," or "dismissal entered against his or her client." (*Ibid.*)

The mandatory provision is both narrower and broader in scope than the discretionary provision. It is "narrower in scope insofar as it is only available for defaults, default judgments, and dismissals, while discretionary relief is available for a broader array of orders." (*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 438.) It is "broader in scope insofar as it is available for inexcusable neglect, while discretionary relief is reserved for *excusable* neglect." (*Ibid.* [cleaned up].)

On appeal, defendants argue that the trial court should have granted mandatory relief under section 473, subdivision (b) based on the declaration of fault submitted by defense counsel. But defendants have not explained how the AAA's dismissal of the arbitration proceeding resulted in a "default," "default judgment," or "dismissal" within the meaning of the mandatory relief provision. These statutory terms are defined in the case law. As used in the statute, the term "default" refers "to a 'default' entered by the clerk (or the court) when a defendant fails to answer a complaint, not to every 'omission' or 'failure' in the course of an action that might be characterized as a 'default' under the more general meaning of the word." (*English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 143 (*English*).) "A 'default judgment' within the meaning of section 473(b) is a judgment entered after

12

the defendant has failed to answer the complaint and the defendant's default has been entered." (*Ibid.*)  And the Legislature added the word "dismissal" to the statute in 1992 to provide similarly narrow relief to plaintiffs who lose their day in court.  (*Id.* at p. 140.)  Specifically, the Legislature " 'intended to reach only those dismissals which occur through [the plaintiff's] failure to oppose a dismissal motion—the only dismissals which are procedurally equivalent to a default.' "  (*Id.* at p. 141, quoting *Peltier v. McCloud River R.R. Co.* (1995) 34 Cal.App.4th 1809, 1817.)  Thus, the mandatory relief provision is not a " 'catch-all remedy for every case of poor judgment on the part of counsel which results in dismissal.' "  (*Gotschall v. Daley* (2002) 96 Cal.App.4th 479, 483–484.)

Applying these definitions, we conclude that the AAA's dismissal of the arbitration for Oremor's failure to pay the expedited review fee does not constitute a "default," "default judgment," or "dismissal" within the meaning of the statute.  Oremor was not defaulted for failing to file an answer, nor was Oremor a plaintiff who failed to oppose a dismissal motion.  Hence, the mandatory relief provision of section 473, subdivision (b) does not apply. (See, e.g., *Urban Wildlands Group, Inc. v. City of Los Angeles* (2017) 10 Cal.App.5th 993, 1001–1002 [judgment entered against plaintiff based on its attorney's failure to lodge administrative record was not a "default," "default judgment," or "dismissal"]; *Noceti v. Whorton* (2014) 224 Cal.App.4th 1062, 1065–1068 [judgment entered against plaintiffs who failed to appear for trial because their attorney miscalendared the date was not a "default," "default judgment," or "dismissal"]; *Vandermoon v. Sanwong* (2006) 142 Cal.App.4th 315, 319–321 [judgment entered against defendants after trial was conducted in their absence was not a "default," "default judgment," or "dismissal"]; *English, supra*, 94 Cal.App.4th at pp. 136–149 [judgment

13

entered against plaintiff after her attorney neglected to file opposition to summary judgment motion was not a "default," "default judgment," or "dismissal"].)

Defendants' reliance on *MJM* is misplaced. In *MJM*, an arbitration was conducted in the defendants' absence and resulted in an award to the plaintiff. (*MJM, supra*, 173 Cal.App.3d at p. 601.) In response to the plaintiff's motion for confirmation of the arbitration award, the defendants sought relief under section 473, subdivision (b), on the ground that their failure to appear at the arbitration hearing "amounted to mistake, inadvertence, surprise and excusable neglect on their part." (*Ibid.*) The trial court agreed with the defendants and vacated the arbitration award. (*Id.* at p. 602.) The Court of Appeal affirmed the order and found no abuse of discretion because the record supported a finding of "excusable neglect." (*Id.* at pp. 604–605.)

For several reasons, *MJM* is inapplicable here. First, *MJM* did not involve a claim for mandatory relief based on attorney fault under section 473, subdivision (b); it involved a claim for discretionary relief based on excusable neglect. Thus, the court had no occasion to decide whether there was a "default," "default judgment," or "dismissal," and did not discuss the issue. Second, even assuming that the arbitration award against the nonappearing defendants was the equivalent of a default judgment in *MJM*, the AAA's order dismissing the arbitration proceedings in this case is not. The AAA's order merely terminated the arbitration proceedings without a hearing or award. Contrary to defendants' argument, this is not "an order with as much finality as an arbitration award" because the result is merely that the case will now be litigated in court instead. This result is no more

14

analogous to a default judgment than an order granting a motion for change of venue.

Finally, in contrast to *MJM*, defendants here make no claim on appeal of "excusable" mistake or neglect, as required for discretionary relief under section 473, subdivision (b). Under the statute, a mistake or neglect is excusable only if " 'a reasonably prudent person under the same or similar circumstances' might have made the same error." (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276.) As defense counsel acknowledged, he received the AAA's February 15, 2023 letter and invoice informing Oremor of the $300 expedited review fee and the March 17, 2023 deadline for paying it, yet he did not review the invoice or forward it to Oremor. He also received the AAA's March 8, 2023 reminder that the fee was still unpaid and due no later than March 17, 2023, yet he wrongly assumed that the fee had already been paid. Even if defendants had raised the issue of discretionary relief on appeal, this erroneous assumption would not be a sufficient showing of excusable mistake or neglect. (See, e.g., *Jackson v. Bank of America* (1983) 141 Cal.App.3d 55, 58 [defendant's mistake in wrongly assuming the case was moot "was not of the excusable variety"].) A reasonably prudent person would have reviewed the AAA paperwork and easily discovered that the expedited review fee was an additional fee that had not yet been paid. Accordingly, the trial court committed no error in denying relief under section 473, subdivision (b).

## DISPOSITION

The order is affirmed.  Respondent is entitled to recover his costs on appeal.

BUCHANAN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

16