Filed 1/29/25

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JENNY-ASHELY COLON-PEREZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SECURITY INDUSTRY SPECIALISTS, INC., <br><br> Defendant and Appellant. | A168297 <br><br> (Alameda County <br> Super. Ct. No. 21CV004546) |

## I. INTRODUCTION

Plaintiff Jenny-Ashley Colon-Perez sued her former employer, defendant Security Industry Specialists, Inc. (SIS), alleging several causes of action related to her employment. After SIS moved to compel arbitration, the parties stipulated to such, and the trial court ordered the claims arbitrated and stayed the pending court action. SIS promptly paid two arbitration fee invoices but failed to pay the next invoice within the 30-day period required by Code of Civil Procedure section 1281.98.[1] Pursuant to that statute, Colon-Perez elected to withdraw from arbitration and moved to vacate the arbitration and stay order. The trial court granted the motion, ruling, in accordance with section 1281.98, that SIS had materially breached the

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III A-D.

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

1

arbitration agreement and Colon-Perez was entitled to proceed with her claims in court. SIS then moved, pursuant to section 473, subdivision (b) (section 473(b)), to vacate the order vacating the arbitration and stay order. The trial court denied SIS's motion.

SIS maintains the trial court erred in granting Colon-Perez's motion to vacate and denying its own subsequent motion to vacate because (1) the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.), and not section 1281.98, applies to the arbitration agreement; (2) the FAA preempts section 1281.98; (3) section 1281.98 violates the contracts clause of the United States and California Constitutions; and (4) it properly sought relief under section 473, subdivision (b). We recently addressed whether the FAA preempts section 1281.98 in *Keeton v. Tesla, Inc.* (2024) 103 Cal.App.5th 26, 32 (*Keeton*), review granted September 11, 2024, S286860. We concluded it does not, as have all but one of the Courts of Appeal that have considered the issue. We are not persuaded to depart from our conclusions in *Keeton*. Nor are we persuaded by SIS's other arguments and affirm the challenged orders.

## II. BACKGROUND

In May 2021, SIS hired Colon-Perez as a site supervisor to oversee a team of security specialists. Three months later, her employment was terminated. Colon-Perez filed a complaint against SIS alleging 18 causes of action and seeking compensatory and punitive damages.[2] SIS moved to compel arbitration and stay the court proceedings. After briefing and a

---

[2] Colon-Perez alleged gender discrimination, sexual orientation discrimination, discrimination on the basis of marital status, disability discrimination, failure to accommodate, harassment, hostile work environment, two counts of wrongful termination, unfair business practices, intentional infliction of emotional distress, and negligence, as well as several Labor Code violations.

hearing, the parties stipulated to arbitration and requested that the court order all claims to binding nonjudicial arbitration and stay the court proceedings. In light of the stipulation, the trial court granted the motion to compel and stayed the proceedings.

On September 1, 2022, the American Arbitration Association (AAA) e-mailed SIS a $1,900 invoice for its administrative fee. Counsel for SIS paid the invoice the same day. The parties then agreed upon an arbitrator who was affiliated with AAA. At the end of November, AAA e-mailed a $750 invoice for the case management fee. Counsel for SIS again paid the invoice on the same day it was sent.

On December 14, AAA e-mailed counsel for SIS a letter notifying SIS it was being billed $64,000 for the estimated deposit to cover the arbitrator's fee and expenses and that $4,000 was "**due upon receipt of this notice**" for preliminary matters. The letter included the following admonition: "As this arbitration is subject to *California Code of Civil Procedure 1281.98*, **payment must be received 30 days from the date of this letter** to avoid closure of the parties' case. Pursuant to *California Code of Civil Procedure 1281.98*, the AAA cannot grant any extensions to this payment deadline unless agreed upon by all parties." Accordingly, the payment deadline was January 13, 2023. The letter additionally stated payments could be made by credit card online using a "Quick Pay option" with a "unique Pay PIN" found on the attached invoice, by wire transfer, or by check.

On December 29, the AAA manager sent the parties a "courtesy reminder" the "neutral compensation deposits . . . were due as of December 14, 2022." The manager attached another copy of the invoice for reference and again informed the parties, "As this arbitration is subject to California Code of Civil Procedure 1281.97 and 1281.98, payment must be

3

received within 30 days of the due date. The AAA cannot grant any extensions to this deadline."

The January 13th deadline came and went, and on January 19, 2023, AAA e-mailed the parties confirming it had "not received payment in the amount of $4,000 for Arbitrator Compensation requested and invoiced to Security Industry Specialists, Inc. in our letter dated December 14, 2022. Pursuant to [section] 1281.98, AAA requests Claimant to review the relevant section of the statute and provide a response on how they wish to proceed. Please respond on or before January 24, 2023. If the parties have agreed to extend the payment deadline, please confirm the agreement of the parties and the date the deadline has been extend [*sic*] to by the response date. If applicable, we will inform the arbitrator of the parties' agreement and new payment deadline date." (Boldface omitted.)

On the same day, January 19th, counsel for SIS submitted the payment, 36 days from the date of the initial invoice.

A week later, pursuant to section 1281.98, Colon-Perez moved to vacate the trial court's prior order compelling arbitration.

In opposition, SIS pointed to the language of the arbitration agreement—that "Any proceeding pursuant to this Employment Dispute Arbitration Procedure is deemed to be an arbitration proceeding subject to the Federal Arbitration Act, 9 U.S.C. §§ 1–16, if applicable, to the exclusion of any state law inconsistent therewith; or, if the FAA is not applicable, to the law of the state of venue"—and argued the FAA, and not the California Arbitration Act (CAA; § 1280 et seq.), governs. SIS alternatively argued that even if California law does apply, section 1281.98, itself, is preempted by the FAA under the " 'equal treatment' principle" (9 U.S.C. § 2).

4

At the hearing, SIS commenced its argument by asserting the agreement expressly incorporated the FAA. The trial court observed, "I don't think there's a dispute on that issue. [¶] I think the question is, does it displace entirely any inconsistent State law? I think that's the issue."

SIS responded, "to the extent that the—the language 'to the exclusion of any State law inconsistent therewith,' it's our position that that doesn't mean the FAA, under the plain language of the agreement, applies only if there's a conflict. To interpret the agreement that way would render that first sentence . . . that the arbitration proceeding is deemed to be and subject to the FAA. To say that that one clause means the FAA only applies when the CAA is inconsistent, I think renders that first sentence meaningless." The court clarified, "Oh, I would agree with you. I don't think that's what the other side is arguing either or what the court is tentatively finding. [¶] The FAA applies and State law applies to the extent not inconsistent with the FAA. I think that's the issue."

SIS continued to press its point—that the "FAA procedural provisions have been expressly incorporated into the agreement through that language. And the agreement does not say that the FAA applies only if the CAA is inconsistent." Counsel noted, "Judge Segal previously found" in his tentative ruling on the motion to compel arbitration, "that the FAA—that the agreement expressly incorporated the FAA. And that language, 'deemed and subject to,' is express, affirmative. It's mandatory and it's not permissive."

The court asked, "Aren't you not—don't I have to forget about a few words there?" When counsel replied, "But I don't believe that that language, 'to the exclusion,' that phrase, that doesn't mean that the FAA only applies if there's an inconsistency," the court stated, "Well, that's right. I mean, State law only applies if it's not inconsistent. So I agree with you." Counsel ended

5

by saying, "But I think that's true only if the agreement doesn't otherwise incorporate the procedural provisions. And it does because the agreement says the FAA and it cites Sections 1 through 16."

The trial court granted Colon-Perez's motion, ruling the parties "expressly incorporated the FAA 'to the exclusion of any state law inconsistent therewith.' " But because section 1281.98 "is not 'inconsistent' with the FAA" and "can be applied concurrently with the federal law," it was applicable. Moreover, continued the court, as the drafter of the arbitration agreement, SIS "could have chosen to displace [section] 1281.98, or the CAA more broadly, but [it] did not do so." Nor, concluded the court, was section 1281.98 preempted by the FAA. Finally, the court ruled SIS materially breached the arbitration agreement when it failed to pay the invoiced fees within 30 days of the due date. The court also lifted the previously imposed stay and denied Colon-Perez's request for sanctions without prejudice.

SIS then moved, pursuant to section 473(b), for relief from the order vacating the motion to compel arbitration and lifting the stay.[3] The trial court denied the motion.

### III.  DISCUSSION

"The CAA ' "represents a comprehensive statutory scheme regulating private arbitration in this state. (§ 1280 et seq.) Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " ' [Citation.] It establishes, among other things, procedures for

---

[3] We discuss additional facts relevant to SIS's section 473(b) motion, *infra.*

6

the enforcement of arbitration agreements and rules for the conduct of arbitration proceedings." (*Keeton, supra*, 103 Cal.App.5th at p. 32.)

In 2019, the Legislature added section 1281.98 to the CAA. (Stats. 2019, ch. 870, § 5.) That section provides in pertinent part, "In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitrator provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach." (§ 1281.98, subd. (a)(1).) If the drafting party "materially breaches the arbitration agreement and is in default under subdivision (a)," the employee or consumer may then elect between several options, including unilaterally withdrawing "the claim from arbitration and proceed[ing] in a court of appropriate jurisdiction." (*Id.*, subd. (b)(1).)

"The Legislature enacted section 1281.98 due to a concern that '[a] company's failure to pay the fees of an arbitration service provider . . . hinders the efficient resolution of disputes and contravenes public policy.' (Stats. 2019, ch. 870, § 1, subd. (c).) Because an employer is responsible for paying arbitration fees, the statute 'aim[ed] to solve a very specific problem— namely, the " 'procedural limbo and delay' " that consumers and employees face when they are " 'forced to submit to mandatory arbitration to resolve a[] . . . dispute,' " and the business or company that pushed the case into an arbitral forum then " 'stalls or obstructs the arbitration proceeding by refusing to pay the required fees.' " ' [Citations.] Prior to the enactment,

7

state law did 'not provide clear guidance for courts and litigants in the event a drafting party fails to properly pay to commence arbitration in a timely manner.' (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019–2020 Reg. Sess.) as amended May 20, 2019, p. 6.)" (*Keeton, supra,* 103 Cal.App.5th at p. 33.)

## A. The Language of the Arbitration Agreement

SIS first presses its argument that by its plain terms the arbitration agreement incorporates the FAA and section 1281.98 is inapplicable.

As we have recited, article 22.1 of the arbitration agreement, titled the "Arbitration Statute," provides, "Any proceeding pursuant to this Employment Dispute Arbitration Procedure is deemed to be an arbitration proceeding subject to the Federal Arbitration Act, 9 U.S.C. §§ 1–16, if applicable, to the exclusion of any state law inconsistent therewith; or, if the FAA is not applicable, to the law of the state of the venue."

As the trial court recognized, the issue here is not whether the agreement incorporates the FAA—it clearly does—but whether it applies to the exclusion of section 1281.98.

Whether an arbitration agreement displaces state law " 'is a question of law involving interpretation of . . . the contract (with no extrinsic evidence),' " which we review de novo. (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 161–162 (*Valencia*).)

"An arbitration agreement is governed by contract law. It is construed like other contracts to give effect to the intention of the parties and the ordinary rules of contract interpretation apply." (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 764.) "Under the plain meaning rule, courts give the words of the contract . . . their usual and ordinary meaning. [Citation.] '[W]e interpret the words in their ordinary sense, according to the

8

plain meaning a layperson would attach to them.' " (*Valencia, supra*, 185 Cal.App.4th at p. 162.) " 'We must view the language of a contract as a whole, avoiding a piecemeal, strict construction approach.' " (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 18.)

Parties may "expressly designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 394 (*Cronus*), italics omitted.) But the parties did not do so here. Rather, the arbitration agreement states in pertinent part, "Any proceeding pursuant to this Employment Dispute Arbitration Procedure is deemed to be an arbitration proceeding subject to the Federal Arbitration Act, 9 U.S.C. §§ 1–16, if applicable, *to the exclusion of any state law inconsistent therewith*." (Italics added.) This language is, indeed, plain on its face—the FAA is controlling where state law is inconsistent with the federal law.

SIS continues to insist that "Nowhere in the Agreement does it state the FAA applies *only if* it is 'inconsistent with' state law." But that is not what the trial court ruled. Nor what we have stated. To the contrary, as the trial court recognized, the FAA *does* apply. However, the plain language of the agreement also allows for the application of state law if it is not inconsistent with the FAA.

SIS's interpretation would have this court redraft the provision so that it reads, "Any proceeding pursuant to this Employment Dispute Arbitration Procedure is deemed to be an arbitration proceeding subject to the Federal Arbitration Act, 9 U.S.C. §§ 1–16, to the exclusion of any state law" omitting the rest of the language. This, we cannot do. (Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if

9

reasonably practicable, each clause helping to interpret the other."]; *Segal v. Silberstein* (2007) 156 Cal.App.4th 627, 633 ["We must view the language of a contract as a whole, avoiding a piecemeal, strict construction approach. If possible, we should give effect to every provision and avoid rendering any part of an agreement surplusage."].)

In *Cronus*, "the parties agreed that their arbitration agreement would be governed by California law, but they further agreed that the designation of California law 'shall not be deemed an election to preclude application of the [FAA], if it would be applicable.' " (*Cronus, supra*, 35 Cal.4th at p. 380.) The court observed that parties to an arbitration agreement may "*expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law." (*Id.* at p. 394.) But the language of the arbitration clause at issue, said the court, which called "for the application of the FAA 'if it would be applicable,' should not be read to preclude the application of [section] 1281.2[, subdivision (c)] because it does not conflict with the applicable provisions of the FAA and does not undermine or frustrate the FAA's substantive policy." (*Ibid.*)

In *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761 (*Espinoza*), the arbitration agreement made no express reference to the CAA. The agreement stated, " 'The arbitrator shall be bound by the provisions and procedures set forth in the Employment Arbitration Rules and Mediation Procedures of the [American Arbitration Association]. The applicable substantive law shall be the law of the state in which [the employee] provide[s] services or federal law. If both federal and state law speak to a cause of action, the party commencing the action shall have the right to elect his/her choice of law.' " (*Espinoza, supra*, 83 Cal.App.5th at p. 785.) The agreement further provided, "discovery is governed by 'the civil discovery

10

statutes of the state in which [the employee] provide[s] services,' " and " '[f]ollowing the issuance of the arbitrator's decision, any party may petition a court to confirm, enforce, correct or vacate the arbitrator's opinion and award under the Federal Arbitration Act, 9 U.S.C. §§ 1–16, if applicable, and/or applicable state law.' " (*Ibid.*)

Although the arbitration agreement did not contain a "broad express incorporation of the CAA's" procedural rules, these rules nevertheless applied, said the *Espinoza* court, because they apply by default in the California courts. (*Espinoza*, *supra*, 83 Cal.App.5th at p. 786.) While the arbitration agreement did not "expressly incorporate the procedural provisions of the CAA, it also [did] not expressly incorporate the procedural provisions of another jurisdiction," and in the absence of "contrary" language, the parties "implicitly consented to application of the CAA's procedural provisions," including breach and waiver under section 1281.97.[4] (*Espinoza*, at p. 786.)

As the trial court here observed, "the case for application of [section] 1281.98 is stronger here than in *Espinoza*, where the arbitration agreement solely referenced the AAAs rules, such that application of the CAA was by 'implicit consent.' Here, by contrast, the arbitration agreement

---

[4] Sections 1281.97 and 1281.98 are nearly identical. "Section 1281.97 'concerns a failure to timely pay "the fees or costs to *initiate*" an arbitration proceeding' (*De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 750 . . . (*DeLeon*)) whereas section 1281.98 'concerns a failure to timely pay "the fees or costs required to *continue*" an arbitration proceeding' (*ibid.*)." (*Reynosa v. Superior Court* (2024) 101 Cal.App.5th 967, 981, fn. 4.) Section 1281.98 controls in the instant case. "Regardless, sections 1281.97 and 1281.98 ' "largely parallel" each other' (*DeLeon*, at p. 750) and—where appropriate— an analysis as to one 'applies with equal force' to the other (*Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 633, fn. 4. . . .)." (*Reynosa*, at p. 981, fn. 4.)

11

expressly acknowledges state law, and limits the preclusive impact of the FAA to state law that is 'inconsistent therewith.' "

SIS contends *Espinoza* is distinguishable because there the agreement referenced the FAA "*only as* the applicable statute . . . *after* the arbitrator issued its decision" (boldface omitted) and here, the agreement "neither contains any such limiting language nor any reference to any part of the Code of Civil Procedure." However, the agreement here *does* refer to state law generally and incorporates it to the extent it is not inconsistent with the FAA.

Compare the situation in *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110 (*Rodriguez*), a case on which SIS relies. There, the parties agreed to arbitrate claims arising out of the contract, " '[p]ursuant to the Federal Arbitration Act.' " (*Id.* at p. 1121.) The court stated that unlike in *Cronus*, there was " 'no other contract provision suggesting the parties intended to incorporate California arbitration law, nor [was] there any language suggesting the parties intended to arbitrate 'in conformance to' some provisions of the FAA but not others." (*Rodriguez*, at p. 1122, italics omitted.) The court concluded there was no ambiguity in the parties' intent because the phrase " 'pursuant to the FAA' is broad and unconditional, unlike the *Cronus* clause, which deferred to the contract's California choice-of-law provision by invoking only 'applicable' provisions of the FAA." (*Ibid.*) Here, unlike in *Rodriguez*, the agreement does not contain a "broad and unconditional" adoption of the FAA. Rather, the agreement provides state law applies to the extent it is not inconsistent with the FAA.

SIS also directs our attention to *Hernandez v. Sohnen Enterprises, Inc.* (2024) 102 Cal.App.5th 222, 243, review granted August 21, 2024, S285696 (*Hernandez*). In that case, the parties executed an arbitration agreement

12

that provided, " 'This Agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. [section] 1 et seq.' " (*Id.* at p. 231.) The agreement further provided if the parties could not agree on an arbitrator, a party could " 'seek appointment of an arbitrator pursuant to the FAA,' " discovery and motions would be conducted under the Federal Rules of Civil Procedure, and the parties waived class or representative actions as permitted by the FAA. (*Ibid*.) After Hernandez filed his complaint, the parties stipulated to arbitration and that the Federal Rules of Civil Procedure applied to the arbitration. (*Id.* at pp. 231–232.) When Sohnen failed to pay arbitration costs within the 30-day limit set forth in section 1281.97, Hernandez moved to withdraw from arbitration. (*Hernandez*, at p. 232.) Sohnen opposed on several grounds, including that the FAA and Federal Rules of Civil Procedure applied to the arbitration, not the CAA. (*Hernandez*, at p. 232.) The trial court granted the motion. (*Id.* at p. 233.)

In a 2-1 decision, the Court of Appeal majority reversed, concluding the parties had selected the FAA and the Federal Rules of Civil Procedure as the governing procedures. The court pointed out there was no provision referring to state law in the agreement and the agreement consistently referred only to procedures contained in the FAA. (*Hernandez*, *supra*, 102 Cal.App.5th at p. 242.) The dissent disagreed, stating the arbitration agreement contained "several features" that made it "too ambiguous to conclude" the FAA "fully applies." (*Id.* at p. 247, dis. opn. of Baker, J.)

The arbitration agreement at issue here is markedly different than that in *Hernandez,* as it expressly references state law and makes no reference to the Federal Rules of Civil Procedure.

In short, the language of the arbitration agreement before us is more like that in *Cronus* and *Espinoza* than in *Rodriguez* and *Hernandez,* and the

trial court did not err in concluding the agreement is governed by the FAA and by California law to the extent it is not inconsistent with the federal act.[5]

### B. Preemption

SIS alternatively maintains the FAA preempts section 1281.98. The FAA "requires courts to place arbitration agreements 'on equal footing with all other contracts.' " (*Kindred Nursing Centers L.P. v. Clark* (2017) 581 U.S. 246, 248.) Under this equal treatment principle, "a court can invalidate an arbitration agreement based on ' "generally applicable contract defenses," ' it cannot do so based on state rules that ' "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." ' (*Kindred Nursing Centers L.P. v. Clark*[, *supra*,] 581 U.S. 246, 251. . . .)" (*Keeton, supra,* 103 Cal.App.5th at p. 34.)

"Like the CAA, the FAA reflects a policy favoring arbitration. [Citation.] Section 2 of the FAA establishes the equal treatment principle. [Citation.] It provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' (9 U.S.C. § 2.) As interpreted, this statutory provision 'preempts any state rule discriminating on its face against arbitration—for example, a "law prohibit[ing] outright the arbitration of a particular type of claim." ' [Citation.] But a state rule is not preempted merely because it is specific to arbitration. [Citation.]

"In general, there are three situations in which state law is preempted by federal law: '(1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, where

---

[5] For the same reason we reject SIS's argument that the FAA applies because the agreement evidences a transaction involving interstate commerce. The FAA *does* apply, but not exclusively to the extent state law is not inconsistent therewith.

14

state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objective of Congress.' " (*Keeton, supra*, 103 Cal.App.5th at p. 34.) Federal preemption presents a pure question of law that we review de novo. (*Espinoza, supra*, 83 Cal.App.5th at p. 778.)

SIS maintains the third type of preemption—conflict preemption—is applicable here. We addressed this same claim in *Keeton* and rejected it, as have all but one of the Courts of Appeal that have considered it. (*Keeton, supra*, 103 Cal.App.5th at p. 37; see *Hohenshelt v. Superior Court* (2024) 99 Cal.App.5th 1319, 1325–1326, review granted June 12, 2024, S284498 (*Hohenshelt*); *Suarez v. Superior Court* (2024) 99 Cal.App.5th 32, 41–43 (*Suarez*); *Espinoza, supra*, 83 Cal.App.5th at pp. 783–785; *Gallo v. Wood Ranch USA, Inc., supra,* 81 Cal.App.5th at pp. 629–630 (*Gallo*); but see *Hernandez, supra*, 102 Cal.App.5th 222, review granted Aug. 21, 2024, S285696.)[6] We need not, and do not, repeat our analysis therein.

SIS maintains *Keeton* overlooked that *Gallo* and its progeny actually honored the terms of the arbitration agreements at issue, but here the arbitration agreement expressly incorporates the FAA and therefore the trial

---

[6] "The federal district courts are split on the matter. ([Compare] *Postmates Inc. v. 10,356 Individuals* (C.D.Cal., Jan. 19, 2021, No. CV 20-2783 PSG [(JEMx)]), 2021 WL 540155, *7–*8, 2021 U.S.Dist. Lexis 28554, *21–*22 [no preemption]; *Agerkop v. Sisyphian* (C.D.Cal., Apr. 13, 2021, No. CV 19-10414-CBM (JPRx)) 2021 U.S.Dist. Lexis [93905], *11–*13 [same]; [with] *Belyea v. GreenSky, Inc.* (N.D.Cal. 2022) 637 F.Supp.3d 745, 758 [statute preempted]; *Lee v. Citigroup Corporate Holdings, Inc.* (N.D.Cal. 2023) 691 F.Supp.3d 1157, 1158 [same].)" (*Keeton, supra*, 103 Cal.App.5th at p. 37, fn. 5.)

court did not "give effect to the parties' agreement." (Italics & boldface omitted.) This is a recycled version of SIS's argument that the FAA, rather than state law, governs the arbitration agreement at hand—an argument we have rejected.

Next, SIS asserts the line of cases *Keeton* follows is inconsistent with *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411 (*Morgan*). Specifically, SIS contends "*Gallo* and *Espinoza* based their analyses on the faulty premise that the fact a rule is 'arbitration-specific is not sufficient to warrant preemption by the FAA.'" We addressed and rejected this argument in *Keeton*. (*Keeton, supra,* 103 Cal.App.5th at pp. 40–41.)

SIS also urges us to follow the majority opinion in *Hernandez,* which concludes that where "the parties have not expressly elected California law," section 1281.97 is preempted by the FAA. (*Hernandez, supra*, 102 Cal.App.5th at p. 242.) We also addressed and rejected a like invitation in *Keeton*. (*Keeton, supra,* 103 Cal.App.5th at p. 37, fn. 5.)

Finally, SIS contends the FAA preempts state laws that stand as an obstacle to accomplishing the FAA's objectives and maintains section 1281.98 is such a law. We also addressed and rejected this contention in *Keeton*. (*Keeton, supra,* 103 Cal.App.5th at p. 40.) SIS urges us to reconsider in light of legislative history stating:

"*Changes in corporate circumstances and the burdens of arbitration.* The entire coalition opposing this bill also notes that the strict provisions surrounding the breach of the contract and associated sanctions are unfair to companies who no longer possess the 'same financial means' at the time arbitration is demanded as the company did when they drafted the contract providing arbitration as the only venue for consumers or employees to adjudicate issues. While they concede that such a circumstance may warrant

moving the dispute to court[,] they contend imposing sanctions in such a case would be unwarranted.

"The concerns of the business community are not wholly unjustified. For example, should a recession drive a company to the brink of bankruptcy, the company may truly have no ability to pay for arbitration through no fault of their own. Nevertheless, regardless of a company's situation, a business that finds itself stuck in an arbitration it cannot afford can easily trace its own choice—perhaps motivated by corporate America's zealous insistence on placing binding arbitration provisions in nearly every contract of adhesion it signs with employees or consumers—to require arbitration. Furthermore, regardless of a company's finances, it should be noted that existing binding arbitration agreements leave employees and consumers with few remedies. While a company is attempting to determine its ability to afford arbitration, the existing law is leaving employee and consumer claims in limbo. *Accordingly, the sanctions, while unforgiving, seem justified regardless of the present economic status of the drafting party. Perhaps, in order to lessen their risk of sanctions, drafting parties should reconsider their liberal use of binding arbitration provisions in contracts, or at a minimum, consider drafting these agreement[s] in a manner that provides all parties increased accessed to the court system in the event circumstances arise that warrant adjudicating disputes in court.*" (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019–2020 Reg. Sess.) as amended May 20, 2019, p. 10, boldface omitted & italics added.)

Pointing to the italicized language, SIS contends section 1281.98 fails the obstacles test because it "discourages and deters the enforcement of otherwise valid arbitration agreements."

17

However, section 1281.98 does not deter enforcement of otherwise valid arbitration agreements.  It deters employers from delaying and otherwise obstructing the FAA's purpose.  As the Legislature also observed, "The U.S. Supreme Court has declared that the FAA represents Congress's intent 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible,' " and as the procedures of section 1281.98 (and sections 1281.97 and 1281.99) "are intended to stop behavior that would undermine the intent of Congress, this measure should not frustrate the purposes of the FAA."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 707 (2019–2020 Reg. Sess.) as amended Apr. 30, 2019, p. 4.)

Moreover, the failure to timely pay fees under section 1281.98 does not automatically render an arbitration agreement unenforceable.  Rather, section 1281.98 gives the nondrafting party the option to choose to remain in arbitration or to litigate the claims in court.  (§ 1281.98, subd. (b).)  These options are triggered only if the drafting party fails to timely pay arbitration fees.  Thus, the statute promotes speed and efficiency in the resolution of arbitral claims—the essential purpose of the FAA.

## C. Contracts Clause

SIS additionally maintains section 1281.98 violates the contracts clause provisions of the United States and California Constitutions.

Article I, section 10 of the United States Constitution states: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."  Article I, section 9 of the California Constitution likewise states:  A "law impairing the obligation of contracts may not be passed."

Under United States Supreme Court authority, contracts clause questions turn on a three-step analysis.  (See *Energy Reserves Group v.*

18

*Kansas Power & Light Co.* (1983) 459 U.S. 400, 410–412 (*Energy Reserves*).)
The first and threshold step is to ask whether there is any impairment at all,
and, if there is, how substantial it is. (*Id.* at p. 411.) If there is no
"substantial" impairment, that ends the inquiry. If there is substantial
impairment, the court must next ask whether there is a "significant and
legitimate public purpose" behind the state regulation at issue. (*Id.* at
pp. 411–412.) If the state regulation passes that test, the final inquiry is
whether the means by which the regulation acts are of a " 'character
appropriate' " to the public purpose identified in step two. (*Id.* at p. 412; *id.*
at p. 418 [characterizing third step as "means chosen" to "implement"
legislative "purposes"].) For economic and social regulation, " 'courts properly
defer to legislative judgment as to the necessity and reasonableness of a
particular measure.' " (*Id.* at pp. 412–413.) The same three-step analysis
applies under the contracts clause of the California Constitution. (See
*Barrett v. Dawson* (1998) 61 Cal.App.4th 1048, 1054–1055.)

The courts that have addressed whether section 1281.98 violates the
contracts clauses have concluded it does not substantially impair arbitration
agreements. They reasoned the statute "does not 'undermine the contractual
bargain' or 'interfere with a party's reasonable expectations' because it
merely imposes additional remedies that foster compliance with arbitration
agreements. Statutory remedies that 'support, rather than impair, the
contractual scheme' do not violate the Contracts Clause." (*Postmates Inc. v.
10,356 Individuals, supra*, 2021 U.S.Dist. Lexis 28554, at p. *28, citing *Sveen
v. Melin* (2018) 584 U.S. 811, 819; accord, *Agerkop v. Sisyphian, supra,*
2021 U.S.Dist. Lexis 93905, at pp. *14–16.)

SIS claims section 1281.98 substantially impairs its rights under the
arbitration agreement because it not only imposes additional remedies, but it

19

also redefines breach, default, waiver, and materiality in the arbitration context, thereby inserting new terms into the parties' agreement. Even if SIS were correct, however, section 1281.98 passes the second and third steps of the contracts clause analysis.

As to the second step, any impairment would be well-supported by a significant and legitimate public purpose to ensure efficient adjudication of employee claims that are subject to arbitration. (*De Leon, supra*, 85 Cal.App.5th at pp. 750–751.) To that end, section 1281.98 is designed to deter employers from delaying arbitration through delay in paying arbitration fees. (*Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 357 (*Doe*).)

As to the third step—appropriate means—the Legislature accomplished section 1281.98's deterrence purpose by "establish[ing] strict breach provisions for nonpayment that did not involve any inquiry into the intent or good faith of an employer or the reasons for nonpayment." (*Doe, supra*, 95 Cal.App.5th at p. 357.) Such a bright-line rule also better ensures there will not be further delays in the arbitration proceedings.

SIS contends section 1281.98 is not reasonable nor appropriate as applied in this case because it is "an innocent party and at no point did it attempt to delay . . . arbitration." However, giving deference to the Legislature's decision to enact section 1281.98 (*Energy Reserves, supra*, 459 U.S. at pp. 412–413, 418), the statute is not so unreasonable in relation to its purpose of promoting timely adjudication of employee claims that it fails the appropriate means test, especially since the statute gives employers a 30-day window to pay arbitration fees past the due date for payment (§ 1281.98, subd. (a)(1)).

20

We thus conclude section 1281.98 is not at odds with the contracts clauses of the United States or California Constitutions.

### D. Miscellaneous State Law Claims

SIS contends that even assuming the CAA applied, "SIS had statutory rights" under section 1010.6, which made AAA's "e-mail service of the invoice ineffective" because SIS "did not consent to electronic receipt of invoices." (Boldface & italics omitted.) However, by its terms, section 1010.6 "governs the *service* of documents *in an action filed with the court,*" and an "arbitration proceeding is not 'an action filed with the court,' and the invoice required by section 1281.97 is 'provided' to the parties but is not 'served.' " (*Suarez, supra*, 99 Cal.App.5th at p. 40.) "Moreover," section 1010.6 "governs the electronic *service* of documents. 'Service' is a legal term of art. [Citation.] Typically, it involves sending service *copies* of documents filed with the court to opposing parties in the litigation. Even if the service procedures of section 1010.6 somehow extended to arbitrations in general, the document that [the employer] seeks to apply it to is not something that is 'served.' It is an invoice—a bill for anticipated services—that governs the economic relationship between the provider and the parties. It is not a document filed with the court or, by analogy, the arbitrator. Nothing in section 1281.97 (or elsewhere in the [CAA]) says anything about the arbitration provider 'serving' the invoice on the parties. The statute merely requires the provider to 'immediately provide an invoice for any fees and costs . . . to all the parties to the arbitration.' " (*Suarez,* at pp. 40–41, italics omitted.)

Finally, SIS claims the trial court erred in concluding it breached the agreement because (a) it did not breach the agreement or waive its arbitration rights because neither the agreement itself (nor the FAA) contains a 30-day requirement or a time-is-of-the-essence clause and (b) it

substantially complied with the payment schedule, paying two out of three invoices on time and because Colon-Perez has not shown she was prejudiced by the late payment.

SIS's first contention is another variation of its claim that only the FAA, and not state law, governs arbitration procedure in this case—a contention we have rejected.

Its second contention—that strict compliance with section 1281.98 is not required—has also been uniformly rejected by the courts. *De Leon, supra,* 85 Cal.App.5th 740, is illustrative.

In that case, after the employer Juanita's Food's failed to pay the necessary arbitration fees within the statutory 30-day period, the trial court concluded, pursuant to section 1281.98, that it had materially breached the arbitration agreement. (*De Leon, supra*, 85 Cal.App.5th at pp. 748–749.) On appeal, the employer maintained "the trial court [had] erred by failing to consider additional factors aside from its late payment in determining the existence of 'material breach' pursuant to section 1281.98." (*Id.* at p. 749.) It further argued, if anyone was to blame for the delay, it was plaintiff. (*Id.* at p. 752.) The Court of Appeal affirmed, concluding—based on the plain language of the statute and the legislative history—"late payment as provided in section 1281.98 constitutes a 'material breach' without regard to any additional consideration." (*Id.* at p. 749.) The court continued, " 'the Legislature intended the statute to be strictly applied whenever a drafting party failed to pay by the statutory deadline.' " (*Id.* at p. 753, quoting *Espinoza, supra*, 83 Cal.App.5th at p. 776; *Espinoza,* at p. 776 [rejecting argument the defendant's late payment of an arbitration fee was in substantial compliance of § 1281.97 and not a material breach because "triggering event is nothing more than nonpayment of fees" within statutory

22

time period regardless of whether "nonpayment was deliberate or inadvertent, or whether the delay prejudiced the nondrafting party"]; see *Gallo, supra,* 81 Cal.App.5th at pp. 631–632, 644 [rejecting argument that § 1281.97 frustrated the arbitral proceedings and thus was preempted by FAA because no showing the defendant was to blame for late payment or that the plaintiff was prejudiced by it].)

In short, the statute contains no exceptions for substantial compliance, unintentional nonpayment, or absence of prejudice. (*Espinoza, supra,* 83 Cal.App.5th at p. 776; see *Doe, supra,* 95 Cal.App.5th at pp. 350, 354–355 [strictly enforcing statute even though payment was only two days late].)

## E. Section 473(b)

Two weeks after the trial court granted Colon-Perez's motion to vacate the order compelling arbitration, SIS moved for relief pursuant to both the mandatory relief and discretionary relief provisions of section 473(b). In an attached declaration, counsel explained she was "out of the office" both "on December 14 and 29, 2022"—the days AAA sent the original invoice and the courtesy reminder—and she "was under the mistaken impression that [SIS's] CFO received a payment link for all invoices . . . and invoices by mail." On December 29, the date of the courtesy e-mail, counsel was out of town and scheduled to return on January 1, 2023. However, two days before her scheduled return, her home flooded "with two to three inches of water due to the extreme winter storms that impacted the Bay Area." Due to the extensive damage, her home required remediation, and during that time, she "worked reduced hours while [she] navigated packing and moving out, meeting with remediation companies and contractors, . . . and inspections for homeowner's insurance and federal emergency disaster relief through

23

FEMA." It was not until she saw the January 19th AAA letter that she "learned [the CFO] did not receive the prior invoices."[7]

The court issued a tentative ruling denying the section 473(b) motion.[8] At the outset of the hearing on the matter, the trial court began by stating it understood what had happened to counsel in December—namely, her house flooding—but the court's decision was "based purely on legal issues that are not in dispute."[9]

Counsel for SIS advanced a number of arguments, including that section 473(b) should apply broadly to "any step in defense of an action" and section 1281.98 does not expressly preclude application of section 473(b). According to counsel, the two statutes could and should be "harmonized both internally with each other and with the whole system of law of which [they are] part of." As counsel saw it, section 1281.98's purpose is to prevent "sabotaging an arbitration by refusing to pay the fees necessary to move forward, which did not occur here," and section 473(b) should be used to "relieve innocent parties from the burden of an attorney's mistake."

Colon-Perez argued, in turn, that section 1281.98 is plain on its face and sets a mandatory deadline to pay fees, and had the Legislature intended to allow for any discretion with respect to compliance it could have done so by adding such language. When counsel began to argue that, in any event, there

---

[7] A similar declaration was also attached to SIS's opposition to Colon-Perez's motion to vacate the order compelling arbitration.

[8] The tentative ruling is not a part of the record on appeal.

[9] The court later stated it would "assume for purposes of this ruling" that counsel experienced "a severe disruption" and that it would "assume for the sake of argument, and I think I can do more than that, that the facts [she] put forward were true" but that "under the law the case . . . doesn't turn on that."

24

had not been a showing of excusable neglect, the trial court interrupted stating, "I'm not going to reach excusable neglect. I realize I could. I could have an alternative basis, but I'm not going to reach it." The court took the matter under submission.

In its written order, the court denied the motion concluding that mandatory relief under section 473(b) applies "only to the entry of default, default judgment, or dismissal entered against the attorney's client" none of which happened here. The purpose of mandatory relief under section 473(b) is "to relieve the hardship of parties who have lost their day in court solely because of counsel's inexcusable failure to act," and here SIS has not lost its day in court, rather the order vacating the order compelling arbitration "simply changes the venue in which this case will be litigated (in this court, as opposed to in arbitration)."

The court also denied discretionary relief because such relief pertains to "procedural errors made in an action," but here, SIS did not "seek relief for a procedural error." Rather, it sought relief for "its failure to timely pay" fees pursuant to the arbitration agreement, which resulted in a material breach, default of the arbitration, and waiver of its right to compel. Under those circumstances, the court "has no discretion but must grant a motion to withdraw" the case from arbitration "regardless of the reason offered" by SIS for its failure to pay. The court also noted SIS "cited no case that would permit the Court to grant relief pursuant to Code of Civil Procedure § 473(b)." Rather, the cases it relied on "involve relief sought . . . for errors made in an action (e.g., untimely filing of request for trial de novo . . .), or from errors that led to an adverse arbitration award upon which a party sought entry of judgment." And, here SIS "is not seeking" such relief, rather it "is seeking

25

relief for its failure to comply with its contractual obligation to timely pay the required arbitration fees."

### *Mandatory Relief*

"Section 473, subdivision (b), contains two distinct provisions for relief: one is discretionary and is reserved for situations of excusable neglect, while the other is mandatory and applies even to inexcusable neglect of an attorney resulting in his or her client's default provided that the attorney submits an adequate affidavit of fault." (*Bailey v. Citibank, N.A.* (2021) 66 Cal.App.5th 335, 348; *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838–839 (*Even Zohar*).)[10] The mandatory provision is both narrower and broader in scope than the discretionary provision. It is narrower "insofar as it is only available for defaults, default judgments, and dismissals, while discretionary relief is available for a broader array of orders." (*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 438.) It is broader "insofar as it is

---

[10] Section 473(b) provides, in pertinent part, "The court may, upon any terms as may be just, relieve a party or his or her legal representative *from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect.* Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken. . . . Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, *vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.*" (Italics added.)

available for inexcusable neglect [citation], while discretionary relief is reserved for '*excusable* neglect.' " (*Ibid.*)

Although the mandatory provision is only applicable for defaults, default judgments, and dismissals, SIS nevertheless contends a " 'default of the arbitration' is the functional equivalent of a 'default judgment or dismissal' " because SIS "lost its 'day in court' concerning the payment of the arbitrator's fees and its right to arbitrate because of its attorney's inadvertence, neglect, and surprise."

"There are two lines of cases concerning the interpretation of 'dismissal' and 'default judgment' under section 473, subdivision (b). The first line of cases holds that 'dismissal' and 'default judgment' mean only that, and should not be expanded to include other judgments." (*The Urban Wildlands Group, Inc. v. City of Los Angeles* (2017) 10 Cal.App.5th 993, 998 (*Urban Wildlands*), citing *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 138 (*English*).)

Moreover, the term "default" in this line of cases—led by *English, supra*, 94 Cal.App.4th 130—refers "to a 'default' entered by the clerk (or the court) when a defendant fails to answer a complaint, not to every 'omission' or 'failure' in the course of an action that might be characterized as a 'default' under the more general meaning of the word." (*English, supra*, 94 Cal.App.4th at p. 143, fn. omitted.) "A 'default judgment' within the meaning of section 473(b) is a judgment entered after the defendant has failed to answer the complaint and the defendant's default has been entered." (*Ibid.*) And, the Legislature added the word "dismissal" to the statute in 1992 to provide similarly narrow relief to plaintiffs who lose their day in court. (*Id.* at p. 140.) Specifically, the Legislature " 'intended to reach only those dismissals which occur through [the plaintiff's] failure to oppose a dismissal

27

motion—the only dismissals which are procedurally equivalent to a default.' " (*Id.* at p. 141, quoting *Peltier v. McCloud River R.R. Co.* (1995) 34 Cal.App.4th 1809, 1817; see *Urban Wildland, supra*, 10 Cal.App.5th at pp. 998–999.)

This strict view as to the reach of mandatory relief under section 437(b) is also the majority view. (E.g., *Urban Wildlands, supra,* 10 Cal.App.5th at p. 998; *Las Vegas Land & Development Co., LLC v. Wilkie Way, LLC* (2013) 219 Cal.App.4th 1086, 1091 [mandatory relief provision under § 473(b) does not apply to summary judgments]; *Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 228–229 [same]; *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1418 (*Huh*) [same]; *Hossain v. Hossain* (2007) 157 Cal.App.4th 454, 457–458 (*Hossain*) [mandatory relief not available for untimely filed opposition to motion to enforce settlement agreement and late motion to enforce because order was not default, default judgment, or dismissal]; *Vandermoon v. Sanwong* (2006) 142 Cal.App.4th 315, 321 (*Vandermoon*) [mandatory relief not available for judgment entered after uncontested trial in the defendant's absence because judgment was not default, default judgment, or dismissal].)

The second, and "much less numerous," line of cases "offers a broader definition and applies the mandatory relief provisions to judgments that are the procedural equivalents of defaults, default judgments, or dismissals." (*Urban Wildlands, supra*, 10 Cal.App.5th at pp. 1000, 998; see e.g., *Gee v. Greyhound Lines, Inc.* (2016) 6 Cal.App.5th 477, 482, 485 [applying mandatory relief provision to dismissal for failure to pay change of venue fees, where dismissal "had the effect of a default resulting in a final judgment in that [plaintiff's] entire complaint was dismissed and no action remained pending"]; *In re Marriage of Hock & Gordon-Hock* (2000) 80 Cal.App.4th

28

1438, 1440–1442 [applying mandatory relief provision to judgment on reserved issues in dissolution proceeding when the appellant failed to appear because of counsel's mistake]; *Yeap v. Leake* (1997) 60 Cal.App.4th 591, 601–602 [applying mandatory relief provision to vacate judgment following arbitration where counsel's failure to properly calendar arbitration resulted in client's failure to appear]; *Avila v. Chua* (1997) 57 Cal.App.4th 860, 867–868 [applying mandatory relief provision to situation where the plaintiff's attorney failed to timely file an opposition to the defendant's summary judgment motion]; but see *Urban Wildlands,* at p. 1000 [disapproving of prior opinions in *Avila* and *Hock*]; *Hossain, supra,* 157 Cal.App.4th at pp. 457–459 [disagreeing with *Yeap*].)

We join the line of cases agreeing "with the cogent analysis in *English*, which is faithful to legislative intent and consistent with established principles of statutory construction.  As the *English* court said, 'It is not an appellate court's task, nor, indeed, its prerogative, when interpreting a statute, to extend the scope of the statute to encompass situations "analogous" to those the statute explicitly addresses.  Rather, an appellate court's task is simply to determine what the Legislature meant by the words it used, relying first and foremost on the words themselves.' (*English, supra*, 94 Cal.App.4th at p. 144.)  Where the statutory language is unambiguous, its plain meaning controls.  [Citations.]  Here, the statutory language is unequivocal.  'As expressly worded, section 473(b) applies *only* to relief sought in response to defaults, default judgments or dismissals.' " (*Huh, supra*, 158 Cal.App.4th at p. 1417; *Urban Wildlands, supra*, 10 Cal.App.5th at p. 1000.)

We therefore conclude an order pursuant to section 1281.98 vacating an order to arbitrate is not a "default," "default judgment," or "dismissal" within

29

the meaning of the mandatory relief provisions of section 473(b). SIS was not defaulted for failing to file an answer. Nor was SIS a plaintiff who failed to oppose a dismissal motion. (See, e.g., *Urban Wildlands, supra*, 20 Cal.App.5th at pp. 1001–1002 [judgment entered against plaintiff based on attorney's failure to lodge administrative record was not "default," "default judgment," or "dismissal"]; *Noceti v. Whorton* (2014) 224 Cal.App.4th 1062, 1065–1068 [judgment entered against plaintiffs who failed to appear for trial because their attorney miscalendared the date was not a "default," default judgment," or "dismissal"]; *Vandermoon, supra,*142 Cal.App.4th at pp. 319–321 [judgment entered against defendants after trial was conducted in their absence was not a "default," "default judgment," or "dismissal"]; *English, supra*, 94 Cal.App.4th at pp. 136–149 [judgement entered against plaintiff after her attorney neglected to file opposition to summary judgement motion was not a "default," "default judgment," "dismissal"].)

### *Discretionary Relief*

Citing to *MJM, Inc. v. Tootoo* (1985) 173 Cal.App.3d 598 and *Alvarado v. City of Port Hueneme* (1982) 133 Cal.App.3d 695, SIS points out discretionary relief can be granted under section 473(b) in connection with an order confirming an arbitration award and subsequent entry of judgment. In *MJM*, an arbitration hearing was conducted in the defendants' absence and resulted in an award to plaintiff. (*MJM,* at p. 601.) In response to the plaintiff's motion to confirm the award, the defendants sought relief under section 473(b) on the ground their failure to appear "amounted to mistake, inadvertence, surprise and excusable neglect on their part." (*Ibid.*) The trial court agreed and vacated the award. (*Id.* at p. 602.) The Court of Appeal affirmed, ruling the record supported a finding of "excusable neglect." (*Id.* at pp. 604–605.) In *Alvarado*, the appellate court similarly ruled "relief was

30

available to a plaintiff under section 473 in a civil action in which a judgment was entered on a judicially mandated arbitration award on grounds that the judgment had been taken against plaintiff through mistake, inadvertence, surprise or excusable neglect." (*MJM,* at p. 604.)

Neither case, however, considered whether a section 473(b) motion seeking discretionary relief can be brought in connection with an order pursuant to section 1281.98 vacating an order to arbitrate.[11]

Like the trial court, we conclude discretionary relief under section 473(b) is inconsistent with the plain language of section 1281.98 and the Legislature's purpose in enacting the statute.

The courts have consistently emphasized that section 1281.98 establishes a "bright line" rule that the Legislature intends is to be strictly applied. For example, in *Espinoza, supra*, 83 Cal.App.5th 761, the Court of Appeal reversed the trial court's conclusion that the defendant's late payment of an arbitration invoice was "in 'substantial[] compliance' with the arbitration agreement and 'not in material breach,' because the delayed payment was due to ' "clerical error," ' and the delay did not prejudice plaintiff." (*Id.* at pp. 775, 778.) The "language of section 1281.97," said the appellate court, "is unambiguous." (*Id.* at p. 776.) "Under the plain language of the statute . . . , the triggering event is nothing more than nonpayment of fees within the 30-day period—the statute specifies no other required findings, such as whether the nonpayment was deliberate or inadvertent, or

_____

[11] The same is true with respect to *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739 and *Reisman v. Shahverdian* (1984) 153 Cal.App.3d 1074, which SIS also cites. Both dealt with relief from post-arbitration judgments and neither considered whether discretionary section 473(b) relief is available following an order pursuant to section 1281.98 vacating an order compelling arbitration and lifting the stay of the court case.

whether the delay prejudiced the nondrafting party." (*Ibid.*)  Thus, the "plain language . . . indicates the Legislature intended the statute to be strictly applied whenever a drafting party failed to pay by the statutory deadline." (*Ibid.*)

Similarly, in *Gallo,* the Court of Appeal stated, "section 1281.97 declares any payment that exceeds the arbitration provider's deadline and a statutorily granted 30-day grace period to be a material breach as a matter of law." (*Gallo, supra*, 81 Cal.App.5th at p. 644, italics omitted.)  It "statutorily defines a material breach as a matter of law to be the failure to pay anything less than the full amount due by the expiration of the statutory grace period, rather than leaving materiality as an issue of fact for the trier of fact to determine." (*Ibid.*; see *Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1074–1075 ["[t]o further its stated purpose, the Legislature in enacting sections 1281.97 and 1281.98 chose to neither require nor permit an inquiry into the reasons for a drafting party's nonpayment"; and it is well within "the Legislature's purview to make a civil remedy available, as a matter of policy, without regard to fault"]; *DeLeon, supra*, 85 Cal.App.5th at pp. 752–753 [finding nothing in section 1281.98's language ambiguous with regard to the existence of a material breach; "[t]o the contrary, the statute's language establishes a simple bright-line rule that a drafting party's failure to pay outstanding arbitration fees" within the 30-day deadline "results in a material breach of the arbitration agreement"].)

While these cases did not consider the specific question before us, they strongly suggest the excuse-laden inquiry required for discretionary relief under section 473(b) is incompatible with the "simple bright-line" rule set forth in section 1281.98 and the Legislature's purpose in enacting it.

Indeed, we have recited the legislative history of the statute, which leaves no doubt the Legislature intends for the 30-day period to be an absolute deadline for payment, absent an express exception under the terms of the arbitration agreement or an extension of time to which the plaintiff agrees. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019–2020 Reg. Sess.) as amended May 20, 2019, p. 10.)

Further, in amending the statute in 2022 (Sen. Bill No. 762 (2021–2022 Reg. Sess.)) the Legislature reiterated its intent that the 30-day period is an inflexible mandate. This legislation was another effort to "ensure arbitration providers do not delay collection of fees in an attempt to circumvent the intent of [Senate Bill No.] 707." (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended June 14, 2021, p. 2.) The bill would "clarify[y] [the] Forced Arbitration Protection Act, [Senate Bill No.] 707 of 2019, to encourage transparency around the due date of arbitration fees in order to prevent unnecessary delays in the resolution of disputes for workers and consumers bound by forced arbitration provisions. Regrettably, we've learned that since the [Senate Bill No.] 707's passage, companies are still able to evade enforcement of the above protections because consumers and employees are not informed about when the fees are due, whether the due date is extended, or whether the fees are paid on time." (*Id.* at p. 4.) Senate Bill No. 762 provided a process "to determine when invoices for arbitration services must be sent out to all parties," and required that "should an extension of a due date for payment for continued arbitration be sought, the new due date must be agreed to by all parties." (*Id.* at pp. 2– 3.) "By requiring arbitration providers to set a due date in writing for payments, and permitting the plaintiff to have input into potential extensions of due dates, this bill is intended to prevent arbitration providers from

delaying payment in order to put off the strict 30-day deadline for payment required by [Senate Bill No.] 707." (*Id.* at p. 3.)

In short, the Legislature has made it clear it is not interested in any excuses, even reasonable ones, as to why an employer fails to meet the 30-day payment requirement set forth in section 1281.98.

We also observe that our Supreme Court has cautioned that the discretionary relief provision of section 473(b) does not "apply to dismissals attributable to a party's failure to comply with [an] applicable limitations period in which to institute an action, whether by complaint [citations] or writ petition." (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 372.) "Statutes of limitations are generally regarded as inflexible, and are ' " 'upheld and enforced regardless of personal hardship.' " ' [Citation.] However, some limitations statutes provide for an extension of the limitation period on a showing of good cause, which has been interpreted as equivalent to a showing under section 473. [Citation.] [But] [w]here the statute lacks an explicit provision for extension, '. . . it must be inferred the Legislature did not intend to permit relief on grounds of good cause or under section 473.' " (*Hanooka v. Pivko* (1994) 22 Cal.App.4th 1553, 1561; *id.* at p. 1563 [holding section 473 inapplicable to statute of limitations for medical malpractice claim and, likewise, to statutory 90-day notice of intent to commence such action].)

*Alliance for Protection of Auburn Community Environment v. County of Placer* (2013) 215 Cal.App.4th 25 (*Alliance*), is similarly instructive. There, the real party in interest Bohemia Properties submitted an application for a proposed development project, and the county circulated a draft and final environmental impact report for public comment. (*Id.* at p. 28.) On issuance of a notice of determination and pursuant to the 30-day limitations period under Public Resources Code section 21167, a petition challenging the final

34

EIR was due on October 29, 2010.  The plaintiffs filed their petition on November 1, three days late.  (*Alliance*, at pp. 28–29.)  Bohemia demurred on the ground the petition was filed outside the limitations period.  The plaintiffs filed opposition as well as a motion for relief under section 473.  (*Alliance*, at p. 29.)  The trial court sustained the demurrer without leave to amend and denied the motion for relief.  (*Ibid.*)

Citing *Maynard*, the Court of Appeal ruled section 21167 "makes no provision for extending the limitations period on a showing of good cause." (*Alliance, supra*, 215 Cal.App.4th at p. 32; *ibid.* ["statutes of limitations are, of necessity, adamant rather than flexible in nature]".)  While the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq; CEQA.) "should be broadly interpreted to protect the environment, CEQA also aims to ensure extremely prompt resolution of lawsuits claiming noncompliance with the act," and the act " 'contains a number of provisions evidencing a clear "legislative determination that the public interest is not served unless challenges under CEQA are filed promptly" . . . [and] once filed, be diligently prosecuted and heard as soon as reasonably possible.' "  (*Alliance*, at pp. 32–33.)

Both *Maynard* and *Alliance* underscore the need for restraint in the utilization of discretionary relief under section 473(b) where the Legislature has clearly expressed the need for a clear and unwavering rule to facilitate prompt disposition of the matter at hand, which it has done with resounding clarity with respect to section 1281.98.

We recognize that "[t]he general underlying purpose of section 473(b) is to promote the determination of actions on their merits"—a point SIS emphasizes.  (*Even Zohar, supra*, 61 Cal.4th at p. 839; accord, *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 255–256 [" 'It is well

settled that appellate courts have always been and are favorably disposed toward such action upon the part of the trial court as will permit, rather than prevent, the adjudication of legal controversies upon their merits.' [Citation.] Thus, 'the provisions of section 473 . . . are to be liberally construed and sound policy favors the determination of actions on their merits.' "].)

However, the denial of section 473(b) relief in connection with an order under section 1281.98 vacating an order compelling arbitration does not prevent a determination of the action on the merits. It merely changes the forum in which the case will be heard.

We therefore conclude discretionary relief under section 473(b) is not available in connection with an order, issued pursuant to section 1281.98, vacating an order compelling arbitration.[12]

## IV.   DISPOSITION

The order issued pursuant to section 1281.98 vacating the order compelling arbitration, and the order denying relief under section 473(b), are AFFIRMED.

---

[12] We therefore do not address SIS's argument that counsel made a sufficient showing of excusable neglect to support discretionary relief. This is not to say we are unsympathetic to the plight in which counsel found herself, caught in the throes of a natural disaster which caused extensive property damage and resulted in she and her family having to evacuate their home. We remain convinced, however, the Legislature did not intend that there be any exceptions to the payment mandate of section 1281.98. Therefore, counsel representing defendants desiring arbitration must establish back-up measures to ensure timely payment.

36

_____
Banke, J.

We concur:

_____
Humes, P.J.

_____
Langhorne Wilson, J.

A168297, Colon-Perez v. Security Industry Specialist

37

Trial Court: Alameda County Superior Court

Trial Judge:      Hon. Karin S. Schwartz

Counsel:

Boyer Wenter LLP, Billie D. Wenter and Todd K.Boyer for Defendant and Appellant.

Marquee Law Group, A.P.C., Poya Ghasri, Gary Brotman and Farshid Azizollahi; Gusdorff Law, P.C., Janet Gusdorff for Plaintiff and Respondent.